T.C. Memo. 2011-48

UNITED STATES TAX COURT

DONALD G. CAVE A PROFESSIONAL LAW CORP., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2717-08.                    Filed February 28, 2011.

<u>Jerry F. Pepper</u>, for petitioner.

<u>Donna Mayfield Palmer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  This case is before the Court on a petition

for redetermination of employment status filed pursuant to

section 7436.[1]  In a notice of determination of worker

_____

[1]Unless otherwise indicated all section references are to
the Internal Revenue Code, as amended, and all Rule references
are to the Tax Court Rules of Practice and Procedure.  All
                                        (continued...)

classification (notice of determination) issued to petitioner, respondent determined that Donald G. Cave (Donald Cave), Michael L. Cave (Michael Cave), David LaHaye (Mr. LaHaye), Michael Matthews (Mr. Matthews), and Renee Cooper Willis (Ms. Willis) were petitioner's employees for all taxable periods of calendar years 2003 and 2004 and that petitioner was not entitled to relief under the Revenue Act of 1978, Pub. L. 95-600, sec. 530, 92 Stat. 2885, as amended (act section 530). Consequently, respondent determined that petitioner was liable for employment taxes[2] and penalties in the following amounts:

| Tax | Quarter/Year | Amount | Sec. 6656 Penalty |
|---|---|---|---|
| FICA, withholding | 3/31/2003 | $13,774 | $952 |
| FICA, withholding | 6/30/2003 | 15,085 | 1,015 |
| FICA, withholding | 9/30/2003 | 12,527 | 1,061 |
| FICA, withholding | 12/31/2003 | 11,727 | 1,022 |
| FUTA | 2003 | 2,170 | 87 |
| FICA, withholding | 3/31/2004 | 16,523 | 1,473 |
| FICA, withholding | 6/30/2004 | 19,416 | 1,557 |
| FICA, withholding | 9/30/2004 | 37,158 | 1,521 |
| FICA, withholding | 12/31/2004 | 17,784 | 1,247 |
| FUTA | 2004 | 2,170 | 87 |

The issues for decision are: (1) Whether petitioner is a proper party before this Court; (2) whether Donald Cave, Michael

---

[1](...continued)
monetary figures have been rounded to the nearest dollar.

[2]For convenience, we use the term "employment taxes" to refer to taxes under the Federal Insurance Contribution Act (FICA), secs. 3101-3128, and the Federal Unemployment Tax Act (FUTA), secs. 3301-3311, and Federal income tax withholding, secs. 3401-3406.

Cave, Mr. LaHaye, Mr. Matthews, and Ms. Willis were petitioner's employees for employment tax purposes in 2003 and 2004; (3) whether petitioner is entitled to act section 530 relief; and (4) whether petitioner is liable for the failure to deposit penalty under section 6656.

FINDINGS OF FACT

I.    Background

Some of the facts have been stipulated.  We incorporate the stipulated facts into our findings by this reference.  On the date the petition was filed, petitioner was a Louisiana corporation with a principal place of business in Baton Rouge, Louisiana.  On March 5, 2009, after the filing of the petition, petitioner was dissolved under Louisiana law, and petitioner's assets were transferred to Cave Law Firm, L.L.C., which continued petitioner's business.

Petitioner was incorporated on February 18, 1993, as a Louisiana professional law corporation.  Petitioner's business consisted primarily of representing individuals injured in accidents.  Fees generated from the provision of legal services were petitioner's only source of income in 2003 and 2004.[3]  All attorney's fees and reimbursements of case expenses were paid directly to petitioner, which then paid a portion of the gross

---

[3]Although petitioner handled most cases on a contingency basis, Ms. Willis handled some family law matters on an hourly basis in 2003 and 2004.

fee (generally one-half or one-third) to the attorney who handled the case.

Petitioner was an S corporation for Federal income tax purposes in 2003 and 2004. At all relevant times, Donald Cave was petitioner's president and sole shareholder.

II. <u>Donald Cave</u>

Donald Cave has been licensed to practice law in the State of Louisiana since May 15, 1969, and he maintained an active trial practice with petitioner in 2003 and 2004. In addition, Donald Cave performed the following services for petitioner in 2003 and 2004:

(1) He selected the associate attorneys who would work for petitioner;

(2) he hired law clerks to provide legal services to petitioner;

(3) he hired petitioner's support staff, which in 2003 and 2004 included an investigator, a receptionist, and several secretaries;

(4) he set the support staff members' hours;

(5) he determined whether petitioner's workers would receive bonuses and in what amounts;

(6) he approved petitioner's payroll; and

(7) he decided whether to make advance payments or reimburse petitioner's workers for case-related and work-related expenses.

In addition, Donald Cave owned the professional office building in which petitioner's principal place of business was located and arranged for petitioner to lease space in the building. In 2003 and 2004 petitioner's attorneys and support staff occupied only 1 of the 12 office suites in the building, and Donald Cave, as lessor, leased or held out for lease the remaining office suites.

Petitioner maintained several client trust accounts, operating accounts, and banking lines of credit in 2003 and 2004. Case recoveries generally were deposited into the client trust accounts, which were under the control of Donald Cave. In addition, Donald Cave was one of only two authorized signatories on petitioner's checking accounts and was the only attorney permitted to access any of petitioner's banking lines of credit in 2003 and 2004.

Donald Cave delegated some of petitioner's day-to-day responsibilities to petitioner's office manager, Elizabeth Wells (Ms. Wells). In 2003 and 2004 Ms. Wells' responsibilities included preparing petitioner's payroll, drafting and signing workers' checks, maintaining petitioner's books and records, monitoring petitioner's bank balances, interviewing potential employees, and approving advance payment and reimbursement requests for less than $100.

Donald Cave received a portion of the fees generated in cases he handled in 2003 and 2004. He also received draws from petitioner of $48,000 in 2003 and $360,000 in 2004.

III. The Associate Attorneys

Donald Cave considered petitioner an "attorney incubator" because he generally hired recent law school graduates with little prior professional experience. In 2003 and 2004 the following attorneys (in addition to Donald Cave) worked for petitioner: Michael Cave, Mr. LaHaye, and Ms. Willis. For convenience, we will refer to Michael Cave, Mr. LaHaye, and Ms. Willis collectively as the associate attorneys. Michael Cave is the son of Donald Cave. Mr. LaHaye and Ms. Willis are not related to Donald Cave.

Each of the associate attorneys joined petitioner as a law clerk before graduating from law school and continued to work for petitioner as an attorney after graduating from law school and passing the Louisiana bar exam.[4] Petitioner treated the associate attorneys as employees for employment tax purposes during their tenures as law clerks.

---

[4]Ms. Willis, admitted to the Louisiana bar on Oct. 8, 1993, worked for petitioner as an associate attorney from that date through 2005. Mr. LaHaye, admitted to the Louisiana bar on Oct. 18, 2002, worked for petitioner as an associate attorney from that date through 2005. Michael Cave, admitted to the Louisiana bar on Apr. 23, 1999, worked for petitioner as an associate attorney until its dissolution, whereupon he began working for Cave Law Firm, L.L.C.

Petitioner did not require the associate attorneys to work from petitioner's principal office, to work set hours, or to account for their time.[5]  Petitioner did not require the associate attorneys to sign written contracts of employment or association, nor did it require the attorneys to sign noncompetition agreements.  The record contains no evidence, however, that any of the associate attorneys either offered services to or performed services for other law firms while they worked for petitioner, nor is there any evidence in the record that the associate attorneys offered their services to the public other than as representatives of petitioner.

None of the associate attorneys had any clients or cases when they joined petitioner as attorneys, and Donald Cave referred cases to them to help them develop their practices.  The associate attorneys also occasionally worked on cases Donald Cave was personally handling.  Donald Cave expected the associate attorneys to generate new business for petitioner, and he provided an incentive for them to do so.  In 2003 and 2004 the associate attorneys received one-half of the gross fees collected in cases they generated but only one-third of the gross fees collected in cases referred to them by or on behalf of petitioner.  The associate attorneys did not receive any other

---

[5]Indeed, following the birth of her child in July 2003 Ms. Willis worked part time from home for the rest of 2003 and throughout 2004.

compensation from petitioner in 2003 or 2004.  The balance of the fee remaining after payment of the associate attorney's share went to petitioner and was used to pay firm expenses, including support staff salaries, telephone bills, and computer and software expenses, and distributions to Donald Cave.

When a new associate attorney joined petitioner, Donald Cave recommended (but did not require) that the new attorney attend seminars in maritime law and trial practice, suggested articles for the new attorney to read, and asked the new attorney to attend one or two of his trials.  Petitioner did not review pleadings or correspondence prepared by the associate attorneys in cases they generated but did review pleadings and correspondence prepared by the attorneys in cases referred to them.  Petitioner generally did not require the associate attorneys to give oral or written status updates regarding their cases but did require oral status updates in cases that were independently generated by one of the associate attorneys and in which petitioner had made an advance payment of case expenses.[6]

---

[6]Although Ms. Willis testified that neither petitioner nor Donald Cave reviewed any of the pleadings or correspondence she prepared in 2003 and 2004 or required oral status updates in any of the cases she handled, her testimony is not necessarily inconsistent with the parties' stipulation that petitioner reviewed pleadings and correspondence and required oral status updates in at least some cases.  Indeed, Donald Cave testified that by 2003 and 2004 Ms. Willis had developed her own clients and that the matters she handled rarely, if ever, required advances.

Petitioner paid each of the associate attorneys a stipend during the attorney's first few months on the job but discontinued the stipend once the attorney's cases began generating fees.

Petitioner did not require the associate attorneys to accept or reject particular cases or kinds of cases, and at least one of the associate attorneys, Michael Cave, rejected some of the cases that Donald Cave referred to him.  However, Donald Cave could not recall either of the other associate attorneys ever rejecting a case he referred to him or her.

Petitioner provided the associate attorneys with the following:

(1) Professional office space (including office furniture, utilities, janitorial services, and security monitoring);

(2) secretarial services;

(3) letterhead and professional business cards identifying the associate attorneys as petitioner's attorneys;

(4) computers, printers, telephones, copy machines, fax machines, and other office equipment and supplies;

(5) access to petitioner's law library, Internet service, and computer server;

(6) premises liability insurance coverage; and

(7) advances for certain case expenses.

To receive advances for case expenses, the associate attorneys were required to make written requests.  As noted above, requests

for less than $100 could be approved by Ms. Wells, but requests for more than $100 required Donald Cave's authorization. Petitioner recovered the advances when it received a recovery in the case. If a case did not result in a recovery, petitioner absorbed the loss.

Petitioner also paid or reimbursed the associate attorneys for other work-related expenses in 2003 and 2004, including mandatory Louisiana State Bar Association dues and disciplinary assessments, the cost of 12.5 hours per year of continuing legal education (CLE), and gasoline expenses.[7] Petitioner also paid Michael Cave's and Mr. LaHaye's automobile expenses in 2003 and 2004, including automobile payments, insurance premiums, and repairs. Donald Cave decided on a case-by-case basis whether to pay an associate attorney's automobile expenses.

Petitioner did not maintain firmwide malpractice insurance in 2003 and 2004 and did not pay or offer to pay the associate attorneys' malpractice insurance premiums. Petitioner did not offer the associate attorneys health or medical insurance, paid vacation or sick leave, retirement contributions, student loan repayment assistance, or child care allowances.

---

[7]Petitioner paid the associate attorneys' gasoline expenses by issuing them credit cards that they could use to purchase gasoline. It is not clear whether the associate attorneys could also use the credit cards to pay other work-related expenses.

IV. <u>Mr. Matthews</u>

In January 1999 Donald Cave hired Mr. Matthews to provide legal services to petitioner as a law clerk. Mr. Matthews was hired on a nonexclusive basis, meaning he was permitted to work for other attorneys who were not associated with petitioner. Mr. Matthews also was allowed to pursue other business interests, which included serving as a motorcycle safety training instructor and as a consultant in litigation involving motorcycle accidents.

Mr. Matthews' work for petitioner in 2003 and 2004 consisted primarily of doing legal research and preparing pleadings and briefs for Donald Cave. Mr. Matthews also worked on occasion for the associate attorneys.

Mr. Matthews was paid a set amount--generally $1,250 every other week. He also received bonuses from petitioner totaling $4,000 in 2003.

Mr. Matthews generally performed his work either at his home or at petitioner's office. Petitioner provided Mr. Matthews with most of the same amenities it provided to the associate attorneys, including a shared office, office equipment and supplies, Internet access, and access to petitioner's law library in 2003 and 2004. Petitioner also reimbursed Mr. Matthews for some of the expenses incurred in his work. Petitioner did not provide Mr. Matthews with secretarial services, letterhead, or

business cards and did not offer him health insurance, retirement contributions, or other benefits.

Mr. Matthews continued to work for petitioner until its dissolution. As of the trial date, Mr. Matthews did occasional work for Cave Law Firm, L.L.C., but did not use or have access to an office at the firm.

V.    Petitioner's Tax Returns

Petitioner filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2003 and 2004; Forms 941, Employer's Quarterly Federal Tax Return, for all quarters of 2003 and 2004; and Forms 940-EZ, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2003 and 2004. Petitioner did not treat Donald Cave, the associate attorneys, or Mr. Matthews as employees for employment tax purposes on its 2003 and 2004 Federal tax filings. Petitioner issued Forms 1099-MISC, Miscellaneous Income, to the associate attorneys and to Mr. Matthews for 2003 and 2004. Petitioner did not issue a Form W-2, Wage and Tax Statement, or a Form 1099-MISC to Donald Cave for 2003 or 2004.

Donald Cave believed it was appropriate for petitioner to treat the associate attorneys and Mr. Matthews as independent contractors because he did not have sufficient control over their work.[8] The record does not disclose, however, the basis on which

---

[8]Donald Cave testified that his treatment of the associate attorneys was affected by a prior audit in the early 1970s of a
(continued...)

Donald Cave determined it was appropriate for petitioner to treat the associate attorneys, Mr. Matthews, and himself as independent contractors.

Richard Roberts (Mr. Roberts), the certified public accountant who assisted in the preparation of petitioner's 2004 Form 1120S, reviewed petitioner's books and records and had discussions with Donald Cave before preparing the return. Mr. Roberts agreed with Donald Cave that petitioner's attorneys and law clerks should be classified as independent contractors for employment tax purposes but did not investigate the facts or do any research to verify Mr. Cave's position.

OPINION

I. Proper Party

As an initial matter, we must determine whether petitioner, which was dissolved under Louisiana law after the filing of the petition, is a proper party before the Tax Court. The capacity of a corporation to engage in litigation in the Tax Court shall be determined by the law under which the corporation was organized. Rule 60(c); see also Bloomington Transmission Servs., Inc. v. Commissioner, 87 T.C. 586, 589 (1986). Petitioner was a Louisiana corporation before its dissolution. Accordingly,

---

[8](...continued)
law firm with which he was then affiliated. However, the record does not contain any details with respect to the prior audit, including whether worker classification for employment tax purposes was even an issue in the prior audit.

Louisiana law governs petitioner's right to prosecute an action in this Court.

Louisiana law provides:  "Upon issuance of the certificate of dissolution, the corporate existence shall cease as of the effective date stated in the certificate, except for the sole purpose of any action or suit commenced theretofore by, or commenced timely against, the corporation."  La. Rev. Stat. Ann. sec. 12:148(C) (2010); see also Grubbs v. Gulf Intl. Marine, Inc., 13 F.3d 168, 172 (5th Cir. 1994).  In Mayfair Sales, Inc. v. Sams, 339 So. 2d 1277, 1279 (La. Ct. App. 1976), the court of appeal of Louisiana explained:

> The purpose of * * * [La. Rev. Stat. Ann. sec. 12:148(C)] is to allow for the extension of corporate existence to finalize litigation previously commenced by or against the corporation.  Without this statute, unresolved claims by or against a corporate entity asserted prior to dissolution would abate upon dissolution of the corporation.  [Citation omitted.]

Petitioner commenced an action in this Court by filing a petition.  Although petitioner was subsequently dissolved under Louisiana law, petitioner is entitled under Louisiana law to prosecute this action.  See La. Rev. Stat. Ann. sec. 12:148(C); Grubbs v. Gulf Intl. Marine, Inc., supra.  Consequently, petitioner is a proper party before the Court.

II.  Employees v. Independent Contractors

Sections 3111 and 3301 impose FICA and FUTA taxes, respectively, on employers on the basis of wages they pay to

employees.  Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002), affd. 93 Fed. Appx. 473 (3d Cir. 2004). Section 3121(d)(2) provides that for FICA tax purposes the term "employee" includes any individual who has the status of an employee under common law.  Section 3121(d)(1), (3), and (4) describes other individuals who are considered employees for FICA tax purposes regardless of their status under common law. Individuals who are described in section 3121(d)(1), (3), and (4), including an officer of a corporation, are commonly referred to as "statutory" employees.  Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 126.  With certain exceptions not relevant in this case, the section 3121(d) definition of "employee" also applies for FUTA tax purposes.  Sec. 3306(i).

For purposes of income tax withholding, the term "employee" includes, inter alia, "an officer of a corporation."  Sec. 3401(c).  The term also includes "every individual performing services if the relationship between him and the person for whom he performs such services is the legal relationship of employer and employee."  Sec. 31.3401(c)-1(a), Employment Tax Regs.  The existence of an employer-employee relationship for income tax withholding purposes is determined generally by reference to the usual common law rules applicable in determining such relationships.  See sec. 31.3401(c)-1, Employment Tax Regs.; see also Rev. Rul. 75-343, 1975-2 C.B. 403.

A.    Burden of Proof

The Commissioner's determinations are presumed correct, and
the taxpayer bears the burden of proving that they are incorrect.
Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  This
principle applies to the Commissioner's determinations that a
taxpayer's workers are employees.  Ewens & Miller, Inc. v.
Commissioner, 117 T.C. 263, 268 (2001) (citing Boles Trucking,
Inc. v. United States, 77 F.3d 236, 239-240 (8th Cir. 1996)).

B.    Whether Donald Cave Was Petitioner's Employee

An officer of a corporation who performs substantial
services for the corporation and receives remuneration for such
services is an employee for employment tax purposes.  Secs.
3121(d)(1), 3306(i); see also Veterinary Surgical Consultants,
P.C. v. Commissioner, 117 T.C. 141, 144-145 (2001), affd. sub
nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100 (3d
Cir. 2002); sec. 31.3121(d)-1(b), Employment Tax Regs.  However,
an officer of a corporation who does not perform any services or
performs only minor services and who neither receives nor is
entitled to receive any remuneration, directly or indirectly, is
not an employee of the corporation.  Sec. 31.3121(d)-1(b),
Employment Tax Regs.  In Veterinary Surgical Consultants, P.C. v.
Commissioner, supra, we held that a surgeon who was the president
and sole shareholder of an S corporation and performed services
for the corporation was an employee for employment tax purposes.

See also <u>Joseph M. Grey Pub. Accountant, P.C. v. Commissioner</u>, <u>supra</u> at 130.

In 2003 and 2004 Donald Cave was petitioner's president, made virtually all corporate decisions with respect to petitioner, received a percentage of the legal fees recovered in cases he handled, and received draws from petitioner of $48,000 and $360,000 in 2003 and 2004, respectively.  These facts tend to establish that Donald Cave was petitioner's employee within the meaning of section 3121(d)(1).

There is no evidence in the record, such as a service agreement, to support a finding that Donald Cave performed services for petitioner in some capacity other than as president.  See <u>Joseph M. Grey Pub. Accountant, P.C. v. Commissioner</u>, <u>supra</u> at 129-130; see also Rev. Rul. 82-83, 1982-1 C.B. 151, 152 ("It is a question of fact in all cases whether officers of a corporation are performing services within the scope of their duties as officers or whether they are performing services as independent contractors.").  Moreover, the management services Donald Cave performed for petitioner were fundamental to petitioner's operations, and such services rarely are performed by independent contractors.  See Rev. Rul. 82-83, <u>supra</u>, 1982-1 C.B. at 152.  Finally, the fact that Donald Cave delegated some day-to-day responsibilities with respect to petitioner to Ms. Wells is immaterial because the record reflects that Ms. Wells

was acting on Donald Cave's behalf and she performed only those tasks that Donald Cave delegated to her.[9]

In summary, we conclude that Donald Cave was a statutory employee of petitioner for employment tax purposes in 2003 and 2004. See secs. 3121(d)(1), 3306(i); sec. 31.3121(d)-1(b), Employment Tax Regs.

C.   Whether the Associate Attorneys and Mr. Matthews Were Petitioner's Employees

Section 3121(d)(2) defines an employee as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". See also sec. 3306(i). The regulations provide additional guidance with respect to a worker's classification as a common law employee. Specifically, section 31.3121(d)-1(c)(2), Employment Tax Regs., provides:

> [An employer-employee] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. * * * [I]t is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that

[9]Even if we were to evaluate Donald Cave's worker classification taking into account only those services he personally performed for petitioner, we would still conclude that Donald Cave was petitioner's employee in 2003 and 2004 because he was petitioner's president, he personally performed substantial services for petitioner, and he received remuneration from petitioner.

the person possessing that right is an employer.  Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services.  * * *

Absent a stipulation to the contrary, this case is appealable to the Court of Appeals for the Fifth Circuit.  See sec. 7482(b)(1)(B).  The Court of Appeals for the Fifth Circuit considers the following factors in deciding whether a worker is a common law employee:  (1) The degree of control the principal has over the worker, (2) the worker's opportunity for profit or loss, (3) the worker's investment in facilities, (4) the permanence of the relationship, and (5) the skill required in the operation.[10] Breaux & Daigle, Inc. v. United States, 900 F.2d 49, 51 (5th Cir. 1990).  No single factor is determinative, all facts and circumstances must be taken into account, and doubtful questions should be resolved in favor of employee status.  Id. at 51-52.

---

[10]This Court and the Internal Revenue Service use similar tests.  This Court considers:  (1) The degree of control exercised by the principal over the worker, (2) which party invests in work facilities used by the worker, (3) the worker's opportunity for profit or loss, (4) whether the principal has the right to discharge the worker, (5) whether the work is part of the principal's regular business, (6) the permanency of the relationship, and (7) the relationship the parties believed they were creating.  See, e.g., Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); see also Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).  No single factor is determinative, and all facts and circumstances must be considered.  Weber v. Commissioner, supra at 387.  The Internal Revenue Service applies a 20-factor analysis, which also requires an examination of all relevant facts and circumstances. See Rev. Rul. 87-41, 1987-1 C.B. 296, 298-299.

1.  Degree of Control

In determining the existence of an employer-employee relationship, the crucial test is the principal's right to control the worker not only as to the result to be obtained but also as to the manner in which the service is to be performed. Weber v. Commissioner, 103 T.C. 378, 387, 390 (1994), affd. 60 F.3d 1104 (4th Cir. 1995); sec. 31.3121(d)-1(c)(2), Employment Tax Regs. The degree of control necessary to find an employer-employee relationship varies depending on the nature of the services provided by the worker. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 270. The level of control necessary to find employee status generally is lower when applied to professionals than when applied to nonprofessionals. Weber v. Commissioner, supra at 388; James v. Commissioner, 25 T.C. 1296, 1301 (1956) (noting that "there are many eminent lawyers who are full-time employees of corporations and who carry on their professional work with a minimum of direct supervision or control over their methods on the part of their employer").

In order for the principal to retain the requisite control over the details of a worker's work, it is not necessary that the principal stand over the worker and direct every move made by the worker. Weber v. Commissioner, supra at 388; sec. 31.3121(d)-1(c)(2), Employment Tax Regs. Rather, the crucial test is whether the principal had the right to impose control. Weber v.

Commissioner, supra at 387-388.  In Weber v. Commissioner, supra
at 388-390, we concluded that the taxpayer, a United Methodist
Church minister, was subject to significant control where, inter
alia, he was required to perform numerous duties, lacked
authority to discontinue the church's regular services, was
required to be "amenable" to the church's governing authority,
and was subject to discipline, including termination, for
ineffectiveness or unfitness.  Conversely, in Simpson v.
Commissioner, 64 T.C. 974, 985-987 (1975), we concluded that the
taxpayer, an insurance agent, was not subject to significant
control where, inter alia, he set his own work schedule,
submitted no written reports, and was not provided with any
"leads" to help him sell insurance policies.

### a.    Associate Attorneys

Whether petitioner had the right to control the details of
the associate attorneys' work is an intensely factual question.
On the one hand, petitioner provided the associate attorneys with
minimal training and supervision.  Donald Cave suggested (but did
not require) that new attorneys attend one or two of his trials,
attend particular seminars, and read certain legal articles.  The
associate attorneys were not required to work from a particular
location, to work particular hours, or to account for their time.
The associate attorneys were not required to accept or reject

certain cases or kinds of cases and were free to reject cases referred to them by Donald Cave.

On the other hand, petitioner, acting through its president, Donald Cave, controlled the assignment of cases to the associate attorneys and determined whether the associate attorneys would be reimbursed for case-related and other work-related expenses. These facts are highly probative that petitioner had substantial control over the manner in which the associate attorneys performed their work. Petitioner, acting through Donald Cave, also reviewed pleadings and correspondence prepared by the associate attorneys in at least some cases and required them to give oral status reports in certain circumstances. In addition, Donald Cave made suggestions to the associate attorneys about how to handle particular cases, and he expected the associate attorneys to help out occasionally with cases he was personally handling. Finally, unlike the firm in Simpson v. Commissioner, supra, which did not provide the taxpayer with any "leads" to help him develop business, petitioner routinely referred cases to the associate attorneys to help them generate fees and develop practices.

On balance, we conclude that the analysis regarding control tips in favor of an employer-employee relationship. Petitioner's ability to affect the course of litigation by its decisions regarding the funding of litigation, work assignments,

and working conditions, including the supervision of associate attorneys who worked on cases generated by petitioner and/or Donald Cave, weighs in favor of an employer-employee relationship. The independence of the associate attorneys in dealing with cases they originated for petitioner[11] is not sufficient to overcome the control that petitioner exercised, and had the right to exercise, over the operation of the firm and the funding and conduct of firm litigation in general.

This factor is indicative of an employer-employee relationship.

### b. Mr. Matthews

Like the associate attorneys, Mr. Matthews was not required to work from a particular location, to work particular hours, or to account for his time. But unlike the associate attorneys, who were expected to generate cases and clients for petitioner

---

[11]The Internal Revenue Service issued two revenue rulings regarding the worker classification status of registered nurses and practical nurses that discussed at least in part the effect of a worker's education and professional credentials. See Rev. Rul. 75-101, 1975-1 C.B. 318; Rev. Rul. 61-196, 1961-2 C.B. 155. Both revenue rulings state that whether a nurse is to be treated as an independent contractor or as an employee depends on the facts and circumstances of the case. Although both revenue rulings conclude that registered nurses and practical nurses may be considered as self-employed if they are engaged in private duty nursing under circumstances where they function independently as licensed professionals, the revenue rulings also state that such nurses are employees if they are on the regular staff of a hospital, clinic, nursing home, or physician and are subject to the direction and control of those that engaged them. The revenue rulings do not conflict with the conclusions we reach in this case.

and who had discretion to manage their cases as they saw fit, Mr. Matthews received all of his assignments directly from Donald Cave or, in rare instances, from one of the associate attorneys, and there is no evidence that Mr. Matthews was free to reject assignments.

This factor is indicative of an employer-employee relationship.

### 2.   Investment in Facilities

The fact that a worker provides his or her own tools generally indicates the worker is an independent contractor. Ewens & Miller, Inc. v. Commissioner, 117 T.C. at 271. Conversely, the fact that a worker has no investment in the facilities used in the work is indicative of an employer-employee relationship.  See id.  Where the value of the tools provided by the worker is minimal, this factor is not of great weight.  See Breaux & Daigle, Inc. v. United States, 900 F.2d at 53.

#### a.   Associate Attorneys

Petitioner provided the associate attorneys with all of the tools and facilities necessary to complete their work, including office space, office furniture, computers, telephones, fax machines, copying machines, and office supplies.  Petitioner also provided the associate attorneys with secretarial services, telephone and Internet service, and access to petitioner's

computer server, law library, and online legal research services.  In some instances, petitioner even paid or reimbursed the associate attorneys' automobile expenses.  Although some of the associate attorneys used their own funds to decorate their offices or to set up home offices, there is no credible evidence that the associate attorneys had more than a de minimis investment in the facilities used in their work.  This factor is indicative of an employer-employee relationship.

### b.  Mr. Matthews

Petitioner provided Mr. Matthews with most of the same amenities it provided to the associate attorneys, including office space, office furniture, a computer, office supplies and equipment, and access to petitioner's law library, online research services, and computer server.  Although Mr. Matthews sometimes worked from home, there is no evidence that he had a significant investment in any of the facilities used in connection with his work for petitioner in 2003 or 2004.  This factor is indicative of an employer-employee relationship.

### 3.  Profit or Loss

A compensation arrangement in which an individual works on commission may be indicative of an independent contractor relationship.  See Simpson v. Commissioner, 64 T.C. at 988 (characterizing an individual as an independent contractor where, inter alia, his "opportunity for, and the degree to which

he might make, a profit or loss in any given year was solely dependent upon his own efforts and skill"). Conversely, a compensation arrangement in which an individual cannot increase his profits through his own efforts and is not at risk for loss is indicative of an employer-employee relationship. See Juliard v. Commissioner, T.C. Memo. 1991-230 (characterizing an individual as an employee where, inter alia, he was paid a salary and reimbursed for expenses incurred with respect to his work).

### a. Associate Attorneys

The associate attorneys' compensation in 2003 and 2004 consisted of a percentage of the gross fees petitioner collected in the cases they handled. The percentage varied depending on who secured the case. Thus, the associate attorneys could increase their profit by developing new clients and cases and by securing larger fees in the cases they handled. However, the associate attorneys bore little, if any, risk of loss from petitioner's cases and clients that they handled, even if they brought them into the firm. Petitioner provided the associate attorneys with virtually all of the tools, facilities, and services necessary to complete their work. Moreover, petitioner paid or reimbursed the associate attorneys for most case-related expenses and absorbed the loss if a case never generated a fee. Petitioner also paid or reimbursed the associate attorneys for

various other professional expenses, including Louisiana State Bar Association dues, CLE courses, and voluntary professional association memberships.

In summary, the associate attorneys could increase their profits through their own efforts and skill but bore no risk of loss. This factor is neutral.

### b. Mr. Matthews

Unlike the associate attorneys, Mr. Matthews had no ability to increase his profits by attracting new clients or securing larger fees in the matters he worked on. Instead, Mr. Matthews was paid a flat amount to perform legal services for petitioner and was reimbursed for the costs incurred in his work. Thus, Mr. Matthews could not increase his profits through his own effort and skill and bore no risk of loss with respect to his work for petitioner. This factor is indicative of an employer-employee relationship.

### 4. Permanence of the Relationship

#### a. Associate Attorneys

Petitioner did not require the associate attorneys to sign written contracts of employment or covenants not to compete. Nevertheless, the record reflects that the relationship between petitioner and the associate attorneys was continuous, permanent, and exclusive. Ms. Willis worked for petitioner as an attorney for 12 years, Mr. LaHaye worked for petitioner as an

attorney for 3 years, and Michael Cave had worked for petitioner and its successor, Cave Law Firm, L.L.C., as an attorney for 10 years as of the trial date.  Although the associate attorneys were not required to work exclusively for petitioner, there is no credible evidence that any of the associate attorneys ever provided or offered to provide services to another law firm during the periods at issue, nor did they offer services directly to the public other than in their capacity as attorneys working for petitioner.  This factor is indicative of an employer-employee relationship.

### b.    Mr. Matthews

Although Mr. Matthews was not required to sign a written contract of employment or a covenant not to compete, the record reflects that Mr. Matthews' relationship with petitioner was permanent rather than temporary.  Indeed, as of the trial date Mr. Matthews had been associated with petitioner and its successor for around 10 years.  However, Mr. Matthews routinely provided legal and other services to lawyers, law firms, and organizations unaffiliated with petitioner, including petitioner's competitors.  This factor is neutral.

### 5.    Skill Required in Operation

### a.    Associate Attorneys

In Breaux & Daigle, Inc. v. United States, 900 F.2d at 52-53, the Court of Appeals for the Fifth Circuit observed that a

worker's minimal skill argued against a finding of independent contractor status. "'[T]he workers were not specialists called in to solve a problem, but unskilled laborers who performed the essential, everyday chores of * * * [the taxpayer's] operation.'" Id. (quoting McLaughlin v. Seafood, Inc., 861 F.2d 450, 452 (5th Cir. 1988), modified 867 F.2d 875, 876-877 (5th Cir. 1989). Unlike the workers whose classification was at issue in Breaux & Daigle, the associate attorneys were highly educated professionals. On the other hand, the associate attorneys, who were newly licensed lawyers when first hired by petitioner, were not specialists called in to solve a particular problem but instead performed the essential, everyday professional tasks in petitioner's business. This factor is neutral.

### b. Mr. Matthews

The preceding paragraph applies with equal force to Mr. Matthews. Although Mr. Matthews' work for petitioner arguably required less skill than the work performed by the associate attorneys, Mr. Matthews was an educated and skilled professional whose responsibilities included essential, everyday professional tasks in petitioner's business. This factor is neutral.

### 6. Other Factors

As noted above, in determining whether a worker is an employee or an independent contractor for employment tax

purposes, no single factor is determinative, and all facts and circumstances must be taken into account.  Some of the other factors that the Court of Appeals for the Fifth Circuit and this Court consider include whether the work is an integral part of the principal's business and whether the principal has the right to discharge the worker.  See id. at 53; Weber v. Commissioner, 103 T.C. at 387.

### a.    Associate Attorneys

Fees generated from the provision of legal services were petitioner's only source of income in 2003 and 2004.  Petitioner hired the associate attorneys to provide legal services to existing clients and to develop new clients.  The services the associate attorneys provided petitioner in 2003 and 2004 were therefore an integral part of petitioner's business.  This factor suggests the associate attorneys were petitioner's employees.

The record does not contain any information regarding whether petitioner had the right to discharge the associate attorneys and, if so, whether there were any limitations on this right.  This factor is neutral.

### b.    Mr. Matthews

Mr. Matthews' work was also an integral part of petitioner's business.  Although Mr. Matthews was a law clerk rather than a licensed attorney, his responsibilities--

conducting legal research and drafting legal pleadings--were crucial to petitioner's law practice. This factor suggests an employer-employee relationship.

The record does not contain any information regarding whether petitioner had the right to discharge Mr. Matthews and, if so, whether there were any limitations on this right. This factor is neutral.

### 7. Summary

#### a. The Associate Attorneys

In summary, we conclude on the basis of all of the relevant facts and circumstances that the associate attorneys were petitioner's common law employees. Three of the five specific factors--degree of control, investment in facilities, and permanence of the relationship--indicate an employer-employee relationship, and the remaining factors are neutral. In addition, the fact that the work performed by the associate attorneys is an integral part of petitioner's business supports our conclusion. Keeping in mind that petitioner bears the burden of proof and that doubtful questions should be resolved in favor of employer-employee status, we conclude that the associate attorneys were petitioner's employees for employment tax purposes in 2003 and 2004.

b.    Mr. Matthews

Most of the five specific factors we considered are indicative of an employer-employee relationship.  In particular, petitioner's control over Mr. Matthews' work and compensation arrangements strongly suggests that he was petitioner's employee in 2003 and 2004.  Keeping in mind that respondent's determinations are presumed correct, that petitioner has the burden of proof, and that doubtful questions should be resolved in favor of employment, and after considering all the facts and circumstances, we conclude that Mr. Matthews was petitioner's employee for employment tax purposes in 2003 and 2004.

III. Act Section 530 Relief[12]

When applicable, act section 530 relieves a taxpayer from employment taxes, notwithstanding that the relationship between the taxpayer and the individual performing services would otherwise require payment of such taxes.  Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. 89, 106 (2003), affd. 425 F.3d 1203 (9th Cir. 2005).  To qualify for act section 530 relief the taxpayer (1) must not have treated the individual as an employee for any period, (2) must have consistently treated the individual as not being an employee on all tax returns for periods after December 31, 1978, and (3) must have had a

_____

[12]Petitioner suggested on brief that we need not reach the merits of petitioner's claim for act sec. 530 relief and made no argument with respect to act sec. 530 relief.

reasonable basis for not treating the individual as an employee. Act sec. 530(a)(1); <u>Joseph M. Grey Pub. Accountant, P.C. v. Commissioner</u>, 119 T.C. at 130.

A taxpayer is treated as having had a reasonable basis for not treating an individual as an employee if the taxpayer's treatment of the individual was in reasonable reliance on (1) judicial precedent, (2) published rulings, (3) technical advice with respect to the taxpayer, (4) a letter ruling to the taxpayer, (5) a past Internal Revenue Service audit of the taxpayer that entailed no assessment attributable to the taxpayer's employment tax treatment of individuals holding positions substantially similar to the position held by the individual whose status is at issue, or (6) a longstanding recognized practice of a significant segment of the industry in which the individual was engaged.  Act sec. 530(a)(2); <u>Veterinary Surgical Consultants, P.C. v. Commissioner</u>, 117 T.C. at 147; see also <u>Ewens & Miller, Inc. v. Commissioner</u>, 117 T.C. at 276-277.  A taxpayer may also qualify for act section 530 relief if it establishes that it had some other reasonable basis for treating its workers as independent contractors.  See, e.g., <u>Images in Motion of El Paso, Inc. v. Commissioner</u>, T.C. Memo. 2006-19.

If a taxpayer establishes a prima facie case that it meets the reporting consistency and substantive consistency

requirements of act section 530(a)(1), relied on one of the reasonable basis safe harbors in act section 530(a)(2), and cooperated with all reasonable requests from the Secretary, then the burden shifts to the Commissioner to establish that the taxpayer is not entitled to act section 530 relief.  Act sec. 530(e)(4) (added by the Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1122(a), 110 Stat. 1766).  With this background in mind, we now consider whether petitioner is entitled to act section 530 relief with respect to any of the workers that respondent determined were employees in 2003 and 2004.

A.   Donald Cave

Although act section 530(a) is not by its terms limited to situations involving worker classification under common law, we have held that act section 530 relief is not available with respect to statutory employees.  Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 132-134; see also Charlotte's Office Boutique, Inc. v. Commissioner, supra at 109 n.10. Donald Cave was petitioner's statutory employee in 2003 and 2004.  See supra p. 18.  Consequently, act section 530 relief is not available to petitioner with respect to Donald Cave.

B.   The Associate Attorneys

Respondent appears to concede that petitioner did not treat any of the associate attorneys as employees for any period

during which they performed services for petitioner as attorneys[13] and that petitioner issued Forms 1099 to the associate attorneys in 2003 and 2004. However, petitioner has not established that it relied on any of the authorities listed in the act section 530(a)(2) safe harbor or that it had any other reasonable basis for treating the associate attorneys as independent contractors.

Donald Cave testified at trial that he believed the associate attorneys were appropriately classified as independent contractors because he did not have control over them. However, there is no credible evidence that Donald Cave did any research or conducted any meaningful investigation with respect to the associate attorneys' worker classification or that he relied on the informed advice of Mr. Roberts. On the contrary, the record suggests that Mr. Roberts accepted Donald Cave's conclusion that the associate attorneys were independent contractors without thoroughly investigating the issue. Consequently, we conclude that petitioner is not entitled to act section 530 relief with respect to the associate attorneys.

C.  Mr. Matthews

Act section 530(a)(3) clarifies act section 530(a)(1) by providing that act section 530 relief is not available "if the

---

[13]As noted above, petitioner treated the associate attorneys as employees during their tenures as law clerks.

taxpayer (or a predecessor) has treated any individual holding a substantially similar position as an employee for purposes of the employment taxes for any period beginning after December 31, 1977." Petitioner treated Mr. Matthews as an independent contractor in 2003 and 2004. However, petitioner treated the associate attorneys as employees during their tenures as law clerks--when they held positions substantially similar to the one Mr. Matthews held in 2003 and 2004. Consequently, act section 530 relief is not available to petitioner with respect to Mr. Matthews.

IV. Section 6656 Penalty

Section 6656 imposes a penalty equal to 10 percent of the portion of an underpayment of tax that is required to be deposited, if the failure to deposit is for more than 15 days. Charlotte's Office Boutique, Inc. v. Commissioner, 121 T.C. at 109. The taxpayer may avoid the penalty under section 6656 if the taxpayer's failure to deposit a tax was due to reasonable cause and not willful neglect. Id. A taxpayer's reliance on the advice of a competent professional adviser may constitute reasonable cause where the taxpayer establishes by a preponderance of the evidence that: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied

in good faith on the adviser's judgment.  <u>Neonatology Associates, P.A. v. Commissioner</u>, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also <u>Charlotte's Office Boutique, Inc. v. Commissioner</u>, <u>supra</u> at 110-111.

Respondent has demonstrated that petitioner failed to deposit employment tax with respect to Donald Cave, the associate attorneys, and Mr. Matthews.  Consequently, petitioner must come forward with evidence sufficient to persuade the Court that respondent's determination is incorrect.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 447 (2001).

Petitioner has not offered any argument that respondent's determination of a penalty is incorrect or inappropriate, nor has petitioner argued that its failure to deposit employment tax was due to reasonable cause and not to willful neglect. Petitioner does not argue that it relied on Mr. Roberts' advice and, in any event, petitioner has not established that it provided him with all necessary and accurate information or relied in good faith on his judgment.  Consequently, we sustain respondent's determination that petitioner is liable for the section 6656 penalty for 2003 and 2004.

V.   <u>Conclusion</u>

In summary, we hold that (1) petitioner is a proper party before this Court, (2) Donald Cave, the associate attorneys, and Mr. Matthews were petitioner's employees for employment tax

purposes in 2003 and 2004, (3) petitioner is not entitled to act section 530 relief, and (4) petitioner is liable for the section 6656 penalty.

We have considered the remaining arguments of both parties for results contrary to those expressed herein, and to the extent not discussed above, we conclude such arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.