T.C. Memo. 2021-32

UNITED STATES TAX COURT

LATEESA WARD, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

WARD & WARD COMPANY, Petitioner <u>v.</u> COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 29568-15, 29569-15.[1]          Filed March 15, 2021.

Lateesa Ward, pro se in docket No. 29568-15.

Lateesa Ward (an officer), for petitioner in docket No. 29569-15.

<u>Shannon M. Harmon</u>, <u>Blaine Charles Holiday</u>, <u>Lisa R. Jones</u>, <u>John Schmittdiel</u>, <u>Julie A. Schwoebel</u>, and <u>John Q. Walsh</u>, for respondent.

---

[1] We consolidated these cases for trial, briefing, and opinion.

**[*2]**     MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, <u>Judge</u>:  Lateesa Ward is a lawyer in Minneapolis who opened her own firm in 2006.  She organized it as a corporation, and the Commissioner audited both her and the firm.  He determined that there were a very large number of substantiation problems.

The parties settled some, and we have to review the rest.

FINDINGS OF FACT

Ward graduated from Hamline School of Law in 1991.  Like many other students, she left school with more than just a degree--she left with a $45,000 student-loan debt, which later ballooned to an amount "exceeding $200,000."  She began her career at a big law firm, but by 2006 decided to go into business for herself.  She formed Ward & Ward Co.--a small firm organized as an S corporation[2]-- and made herself its sole shareholder.  During the years in question the firm had only two employees:  Ward and one other attorney.

---

[2] S corporations get their name because they are taxed under subchapter S of the Code.  <u>Maines v. Commissioner</u>, 144 T.C. 123, 125 n.3 (2015); sec. 1366(a)(1).  (All section references are to the Internal Revenue Code and regulations in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless we say otherwise.)  Even though they don't pay taxes, S corporations do file information returns to report their income and deductions to their owners.  <u>See</u> sec. 6037.

**[*3]**  The firm had a rough start, and Ward began to struggle financially.  She was able to get some of her debt discharged in 2012 and 2013.  Midland Funding discharged about $7,000 of debt in 2012, and FIA Card Services NA discharged another $11,000 of debt in 2013.

When it comes time for an S corporation to report its activities, it files Form 1120S, U.S. Income Tax Return for an S Corporation.  And, like other corporations, it files Forms 941, Employer's Quarterly Federal Tax Return, on which it reports the taxable compensation of corporate officers and employees.  S corporations then pass through to their shareholders all items of income, expenses, and deductions.  An S corporation's shareholder often uses the familiar Form 1040, U.S. Individual Income Tax Return, which has a Schedule E, Supplemental Income and Loss, on which to report items such as compensation paid and income earned that flow from the corporation.

The usual pattern is for an S corporation's shareholder to use the corporation's information return as a source of data for her own.  See sec. 6037.  Both returns should, with some exceptions here and there, match up.  That didn't happen here.

[*4]   For 2011 the firm's Form 1120S showed a loss of $1,373; officer compensation of $62,388; and wages of $33,925.  The firm reported employee compensation totaling $41,483.78 on its Forms 941.

Ward's Form 1040 for that year, however, showed no wages or salaries received.[3]  She properly showed a loss of $1,373 related to the firm on her Schedule E, but also reported the firm's income and expenses on her Schedule C, Profit or Loss From Business.  (Both parties agree that the Schedule C should now be ignored since the firm is an S corporation.)

The 2012 and 2013 tax years had similar issues, as the firm reported income and compensation and wages that differed from form to form.  And then Ward's own return for those years didn't match these.

We can summarize all the mismatches of the numbers on these forms:

| Ward & Ward's Form 1120S income v. Ward's Form 1040 | | |
|---|---|---|
| Tax year | Form 1120S | Form 1040 Schedule E |
| 2011 | ($1,373) | ($1,373) |
| 2012 | 5,309 | 2,654 |
| 2013 | (17,402) | (17,402) |

---

[3] Ward did report $200 of other income, but it appears to be unrelated to the firm and is not contested by the Commissioner.

[*5]

| Form 1120S compensation for employees/officers v. Form 941 v. Form 1040 | | | | | | |
|---|---|---|---|---|---|---|
| Tax year | Form 1120S officers comp. | Form 1120S wages | Total Form 1120S employee comp. | Form 941 total comp. | Form 1040 wages/ salary | Form 1040 other income |
| 2011 | $62,388 | $33,925 | $96,313 | $41,483.78 | -0- | $200[4] |
| 2012 | 73,448 | 47,171 | 120,619 | 52,198.60 | -0- | 73,448 |
| 2013 | -0- | 108,469[5] | 108,469 | 77,444.64 | $24,105 | 48,136 |

This mismatching of income and wages and an improperly completed Schedule C for 2011 caused the Commissioner to audit both Ward and the firm. We tried the cases in St. Paul. Ward was a resident of Minnesota when she filed her petition; her firm's principal office was in Minnesota.[6]

OPINION

I.    Ward & Ward

The Commissioner challenges a large number of the firm's business expenses, but his single biggest disagreement with the firm's reporting is its

---

[4] This does not appear to relate to the firm.

[5] The firm's only other employee received a Form W-2 reporting $53,339.

[6] This means that an appeal would presumptively go to the Eighth Circuit. See sec. 7482(b)(1)(A) and (B).

**[\*6]** failure to report and pay tax on the compensation that it paid Ward. We'll start with that one.

#### A.    Employment Taxes

Observant workers notice employment taxes every payday. "FICA" taxes are a percentage of wages and help fund Social Security and Medicare. Sec. 3101(a) and (b). Employers are subject to the same tax. They too must pay tax on their employees' compensation to the government to help fund Social Security and Medicare. Sec. 3111(a) and (b). Employers report wages paid and employment taxes withheld and owed on those wages on Forms 941.

An employer is liable for both its own portion and the employee's portion of employment taxes.[7] Sec. 3403; sec. 31.3403-1, Employment Tax Regs. For all years at issue in these cases, the Commissioner argues that the firm did not pay employment taxes on all the wages that Ward received. The disagreement is largely about what the firm calls the "officer compensation" that it paid Ward.[8]

---

[7] The employer typically pays the employee's portion with money withheld from the employee's paycheck.

[8] The firm didn't claim to pay any "officer compensation" in 2013. Ward instead claimed $48,136 as "Wages/Draws" on her personal return. Like the officer compensation from the previous two years, the Commissioner argues it's all wages.

**[\*7]** The firm acknowledges that some of this compensation was salary or wages, but says the rest constituted distributions of the firm's earnings and profits.[9]

The parties now agree that Ward is indeed an employee of the firm. (Under the Code, officers are employees. Sec. 3121(d)(1).) Any compensation paid to Ward in her role as an officer is considered wages. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 129-130 (2002), aff'd, 93 F. App'x 473 (3d Cir. 2004). It's settled law that the firm is liable for employment taxes on these wages.

The firm offers no evidence other than Ward's own testimony that any of these payments were anything but compensation. The firm, therefore, is liable for employment taxes on all amounts that the Commissioner identified as officer compensation.[10]

---

[9] The firm also says that portions of those distributions should not be taxed because they were returns of Ward's basis in the firm. Under section 1368(a) and (b) an S corporation shareholder doesn't have to include distributions from the corporation in income if she has basis in the corporation that exceeds the amount distributed. Unfortunately for the firm, even if we were to accept that it paid Ward distributions in any amount, there is no evidence of what basis, if any, she had in the firm for any of the years before us.

[10] The firm, while acknowledging that Ward was an employee who received compensation, nonetheless requests at various points in its brief that Ward's compensation be taxed directly to her as self-employment income. Since there's no evidence that Ward's work for the firm was as anything other than its officer,

(continued...)

[*8]   Section 530 of the Revenue Act of 1978 relieves some firms from liability in situations somewhat like this.  A firm that has consistently not treated an individual as an employee isn't liable for employment tax on compensation paid to that individual unless the firm had no reasonable basis for not treating the individual as an employee.  See Revenue Act of 1978, Pub. L. No. 95-600, sec. 530(a)(1) and (2), 92 Stat. at 2885-86; see also Donald G. Cave a Prof'l Law Corp. v. Commissioner, T.C. Memo. 2011-48, 101 T.C.M. (CCH) 1224, 1231 (2011), aff'd per curiam, 476 F. App'x 424 (5th Cir. 2012).  Here, though, we find the firm had no reasonable basis for treating Ward as anything other than an employee. The Code is clear that officers are employees.  See sec. 3121(d)(1).  Ward stated that she was an employee.  And by filing Forms 941, the firm showed it was aware that it had to pay employment taxes on wages.

B.     Contested Expenses

The parties settled their disputes about many of the expenses that the Commissioner disallowed.  Ward failed to challenge the disallowance of some others.  See, e.g., Mendes v. Commissioner, 121 T.C. 308, 312-13 (2003) ("If an argument is not pursued on brief, we may conclude that it has been abandoned").

---

[10](...continued)
we deny this request.

**[\*9]** It's not entirely clear which expenses remain, so we err in Ward's favor and discuss those that she raised at some point in this litigation.

Tax year 2011 has the most in dispute. The first are the expenses of a trip to New York City that Ward and a client took that year. The firm claims this trip was to market its services--"schmoozing a client." Here they are:

| Expense | Amount |
|---|---|
| Delta plane ticket | $429.40 |
| Dining, entertainment, & petty cash | 284.82 |
| Hotel | 306.28 |
| Parking[11] | 102.75 |
| Total | 1,123.25 |

Section 162 allows a deduction for ordinary and necessary business expenses, but taxpayers have the burden of proving their right to deductions, see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 83-84 (1992), as well as substantiating their claimed deductions by keeping and producing records, see sec. 1.6001-1(a), Income Tax Regs. That a taxpayer claims deductions on her return is

---

[11] It is unclear from the record if this should be included in our discussion of the New York trip. Ward testified that the parking expenses were wholly unrelated to the trip. But the exhibits from trial include it with the trip, as does Ward's posttrial opening brief. Though it will have minimal effect, we will address it here.

[*10] not itself substantiation.  See, e.g., Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).  When a taxpayer fails to substantiate her deductions with precision, we may estimate certain expenses, but only if she provides at least some evidence to support estimates *and* we are convinced she incurred them in connection with her trade or business.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Cohan v. Commissioner, 39 F.2d 540, 543-44 (2d Cir. 1930); Finney v. Commissioner, 27 T.C.M. (CCH) 1510 (1968).

The law also has enhanced substantiation requirements under section 274 for some expenses.  These include travel, meals, and entertainment.  To deduct these expenses, a taxpayer must "substantiate[] by adequate records or by sufficient evidence" the amount, time and place, and business purposes of the expenditures.  Sec. 274(d).  Section 274's requirements deprive us of any power to estimate deductions under Cohan.  See sec. 1.274-5T(a), Temporary Income Tax Regs.

For travel expenses, the regulations are even more specific.  Section 1.274-5T(b)(2), Temporary Income Tax Regs., requires that a taxpayer show:  the amount of each separate expenditure, time of travel (including dates of departure and return), destinations of travel, and business purpose of the travel.  This almost always means a taxpayer has to keep an account book, diary, log, statement of

[*11] expense, or other similar documentary evidence with contemporaneous entries as she makes each expenditure. See id. para. (c)(2).

To substantiate the expenses of this trip, the firm points us to its 2011 bank statements. These statements do show a Delta charge for $429.40, a cash withdrawal of $140.00, three restaurant charges totaling $177.48, and a Priceline.com charge of $306.28. The statements do not show parking fees of $102.75.[12]

What these statements also don't show is any way to tell what the business purpose of each expense was--or if there was a business purpose at all. Nor can we tell the dates of travel from these bank statements. That's not nearly enough to satisfy the stringent requirements of section 274.[13]

We deny these New York travel expenses.

---

[12] An examination of the firm's bank statements shows a total of $105.75 in parking expenses for 2011, but these were all for parking meters and lots in Minnesota, not New York. Besides, the Commissioner already allowed $105.75 in parking costs to be deducted.

[13] Ward incorrectly argues that the burden of proof should shift to the Commissioner under section 7491 because her testimony and other evidence presented at trial were uncontested. As in Viralam v. Commissioner, 136 T.C. 151, 161-62 (2011), the burden of proof has no practical consequences in these cases. Our findings with respect to all factual issues are based on a preponderance of the evidence. See Blodgett v. Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g 86 T.C.M. (CCH) 90 (2003); Knudsen v. Commissioner, 131 T.C. 185, 188-89 (2008).

[*12] The parties also disagree about a few other 2011 expenses:

| Expense | Amount |
| --- | --- |
| Contractor payments | $2,020.48 |
| Office Max charges | 15.39 |

The Commissioner allowed $11,448.52 for "contractor payments." To support the remaining $2,020.48, the firm relies on carbon copies of checks. It does not, however, offer any evidence as to what services were performed by the recipients of those checks. Or any other indication that the checks were written to pay for business-related expenses. With nothing else, we will not allow any additional amount.

Then there is the $8,142 the firm claimed for supplies and products. The Commissioner allowed $2,477.03--including $557.91 from Office Max. The firm argues it spent $573.30 at Office Max, relying again on bank statements. These do show Office Max charges that total $573.30. We don't have anything in the record about what Ward bought at Office Max, but we did believe her testimony that she doesn't shop there for personal items. This wouldn't be enough if office supplies were the type of expenses covered by section 274, but they're not. On this one, we get to believe a business owner's testimony, and here we do. We'll allow the full $573.30.

[*13] For 2012 the only expenses in dispute are:

| Expenses | Amount |
|---|---|
| Office groceries | $1,238 |
| Memberships | 30 |

The firm states that the groceries were for items like "coffee, tea, soda, water, candy, chips, donuts" and that the cost wasn't excessive. To substantiate this expense, the firm relies on a few barely legible receipts whose numbers we can't possibly decipher. With no records of these expenses besides illegible receipts and testimony we don't credit--groceries are a very common (and nondeductible) personal expense--we disallow these deductions.

The firm originally claimed $5,528 in membership expenses, and the Commissioner allowed $4,381.35. The firm didn't press any of the remainder except for a $30 expense to William Mitchell College paid on November 6, 2012. The Commissioner had already allowed one $30 expense to William Mitchell College on November 6, 2012, but Ward argues she paid $30 twice that day. We actually agree with her on this one--the bank statement supports her story, and we think it more likely than not that the second $30 had the same deductible purpose as the first one.

**[*14]** For 2013 the only remaining disputed expense is an insurance expense of $265. The firm points us to a 2013 bank statement that shows a charge to "Brac 2204 Web Pay 131114 Brac Ward and Ward" on November 15, 2013. We have no idea what this means, let alone what its business purpose is supposed to be. With no other substantiation, we deny this deduction.

II.     Ward's Tax Returns

The Commissioner also raised these issues on Ward's own tax returns:

●       failure to properly report flowthrough income from the firm for 2011 and 2012;

●       the related issue of characterizing her compensation as wages or draws; and

●       whether she received cancellation-of-debt income.

A.      Failure To Properly Report Flowthrough Income

This issue requires a brief tax lesson. The firm was organized as an S corporation. As we've already said, S corporations generally don't owe tax themselves, but pass income and deductions through to their owners. See Gitlitz v. Commissioner, 531 U.S. 206, 209 (2001). The income or loss shown on the firm's Forms 1120S will flow through to its owner, who must report it on Schedules E attached to her Forms 1040. Since Ward is the sole shareholder of

**[\*15]** the firm, 100% of the firm's income and losses *should* flow onto Ward's Schedules E.

All three years before us, however, have mismatches between the firm's and Ward's own tax returns.

For 2011 the firm reported on its Form 1120S a loss of $1,373. Ward properly reported this $1,373 loss on her Schedule E. She mistakenly reported her firm's income and expenses a second time on her Schedule C, which is the form that owners of sole proprietorships use. Ward understands this now, and she and the Commissioner agree that this double reporting was a mistake.

For 2012 the firm reported income of $5,309. Ward reported only $2,654 of this income on her Schedule E[14] despite being the sole shareholder of the firm. The Commissioner proposed an upward adjustment of $55,755, but Ward argues this figure is $11,470 too much because the Code allows an S corporation's shareholder to receive tax-free distributions up to the amount of her basis. This is a legal mistake. *Income* from an S corporation is not the same as *distributions* from an S corporation. See sec. 1366(a); Kim v. Commissioner, 105 T.C.M. (CCH) 1017, 1018 (2013) ("While basis is taken into account for purposes of determining whether distributions are taxable, it is not taken into account with

---

[14] Neither party attempts to explain this discrepancy.

[*16] respect to the amount of [an S corporation's] income that passes through to petitioners"). Distributions have nothing to do with income. Distributions are capital that owners remove from their corporations, see Rogers v. Commissioner, 102 T.C.M. (CCH) 536, 538 (2011), aff'd, 728 F.3d 673 (7th Cir. 2013), while income is, among other things, gains and profits, see sec. 61. An S corporation shareholder may pay tax on her corporation's earnings, keep the money in the corporation till a later year, and then pay it to herself--that'd be a distribution. But in the year the corporation earns that income, its owner must report and be taxed on it.

Ward introduced no evidence that the firm's 2012 payout was really a distribution. See supra p. 7. We therefore find that all of the firm's income flows to Ward and is income to her.[15]

B.    Wages

Ward also took an eccentric approach to the compensation that she paid herself as the firm's officer. We've already held that the firm owed employment tax on this compensation. Section 61(a) states that "gross income means all

---

[15] Ward argued for the first time in her reply brief that her 2013 Schedule E income should be reduced by $23,992.72 because she has basis in the firm. But just as with 2012, there is no evidence that the firm paid Ward a dividend in 2013. For the same reasons stated above, we deny this request.

[*17] income from whatever source derived." This includes Ward's compensation for her services as the firm's officer. See sec. 61(a)(1). On her 2011 return Ward omitted this compensation; on her 2012 and 2013 returns she reported it as "Wages/Draws," and argued that only part of it should be taxable. We've already held against the firm on this point; we must rule against her in the individual case too.

C.    Cancellation of Debt

The last issue in dispute is whether the discharge of Ward's debts in 2012 and 2013 was income. Section 61(a)(12) told us that the discharge of indebtedness generally does produce income.[16] But there's an exception if the discharge occurred when the taxpayer was insolvent. Sec. 108(a)(1)(B). Section 108(d)(3) defines a person as insolvent if her liabilities exceeded her assets "immediately before the discharge."

Ward had the burden to show that she was insolvent when her debts were discharged. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Bressi v. Commissioner, 62 T.C.M. (CCH) 1668 (1991), aff'd, 989 F.2d 486 (3d

---

[16] Congress amended this part of the Code in 2017, and the inclusion of discharge of indebtedness in one's income is now at section 61(a)(11).

**[\*18]** Cir. 1993). Midland Funding discharged some debt in 2012, and FIA Card Services NA discharged some debt in 2013.

We've stressed before that the proof of insolvency that we need is information about assets and liabilities *immediately* before a debt is discharged. Shepherd v. Commissioner, 104 T.C.M. (CCH) 108 (2012) (valuations two and three years after discharge insufficient). Ward testified that she was insolvent during 2012 and 2013 because she had student debt that exceeded $200,000. She had a statement from Sallie Mae that showed the total value of her student loan debt during 2014. She also testified that she had a mortgage on her home of around $170,000 in the years at issue, and a tax debt of more than $300,000, and submitted her own written statements as proof. The problem is that there was nothing else in the record to verify these amounts. No mortgage statements, no student-loan repayment checks or statements, no statement of account from the IRS.[17] Without them, we will not find Ward's testimony alone to be sufficient proof of her debts, much less of her insolvency.

As thin as the evidence is of Ward's debts, the evidence of her assets is even thinner. The only information in the record that describes her assets is a Form

---

[17] Ward attempted to introduce several of these documents at trial, but hadn't given the Commissioner the 14-day notice required by our standing pretrial order. See Rodriguez v. Commissioner, 114 T.C.M. (CCH) 278, 278-79 (2017).

**[*19]** 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, for 2013.  Ward completed this form herself and it stated that her assets were cash of $332.16, investments of $2,551.66, and real property worth $147,500.  We do not find this form sufficient to prove the extent and value of Ward's assets.

We don't doubt that Ward was struggling financially during the years at issue, but this is just not enough.  We can't determine with any certainty either Ward's assets or liabilities during the years at issue.  We find that the exception of section 108 does not apply and Ward must include the discharge of indebtedness in income for both her 2012 and 2013 tax years.

Decisions will be entered under

Rule 155.