MAURICE A. GILMARTIN, JR. and NANCY W. GILMARTIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gilmartin v. Commissioner
Docket No. 2884-70
United States Tax Court
T.C. Memo 1973-247; 1973 Tax Ct. Memo LEXIS 40; 32 T.C.M. (CCH) 1158; T.C.M. (RIA) 73247; November 13, 1973, Filed *40 Petitioners donated real estate to a school district for which they claimed a charitable contribution deduction for the value determined by petitioners' appraiser who before being retained by the donor had made an independent appraisal of the property at the same value for the school district donee. Held: The fair market value of the donated property determined. Petitioners also claimed a depreciation deduction on a residence which was inherited and held for sale only. Held further: Proof of basis for depreciation is denied where based only upon a local real estate tax assessment bill of unknown date and upon a conclusion in a conference report of a revenue agent as to the amount of the depreciation deduction for a prior taxable year. Joseph Lapatin, for the petitioners. Russell F. Kurdys, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined a deficiency of $6,266.34 in the Federal income taxes of the petitioners 2 for the calendar year 1966. The issue *42 arising out of respondent's notice of deficiency requires the determination of the fair market value of a parcel of land donated in 1966 by Nancy W. Gilmartin to a school district for purposes of computing the amount of deduction for charitable contributions the petitioners are entitled to under section 170 of the Internal Revenue Code of 1954. [1]
Additionally, on petition to the Court, the issue is presented as to the entitlement to petitioners of an allowance for depreciation in the amount of $753.25 on a residence house. No depreciation was claimed on the return with respect to the house. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioners, Maurice A. Gilmartin, Jr. and Nancy W. Gilmartin (hereinafter Maurice and Nancy), are husband and wife whose legal residence at the time of filing of the petition herein was in New York, New York. For the taxable year 1966, a joint Federal income tax return *43 was filed by petitioners with the district director of internal revenue for the Manhattan district, New York, New York. 3 On December 21, 1966 Nancy made a gift of land consisting of 1.399 acres in Smithtown, New York to Central School District No. 1 of the town of Smithtown, New York (hereinafter School District). Nancy inherited the 1.399 acres in issue in 1957 from her father's estate where it was valued for Federal estate tax purposes at approximately $1,900. In 1966 the School District was considering a site for a new school. Anthony Psota (hereinafter Psota) was retained by the School District as an advisor and appraiser. Psota subsequently became, and was at the time of the trial of this case, the Regional Director of Appraisals for the General Services Administration. In due course, the site selection committee tentatively selected a location known as the Landing Meadow Road site which was comprised of the 1.399 acres considered herein and the 10.743 acres adjoining to the south owned by Richard and Elisabeth Nicodemus. Pursuant to the request of the School District, Psota rendered a written report of appraisal dated November 9, 1966 to the School District in *44 which he determined the fair market value of Nancy's parcel to be $19,500 and that of the Nicodemus parcel to be $59,100. At the time of said appraisal, Psota did not know, nor did he have contact with, Maurice and Nancy and he also did not know that the 1.399 acre parcel might be the subject of a gift to the School District. In preparing this appraisal 4 report for the School District, Psota understood that the School District planned to use it to negotiate the purchase of the properties and that, if condemnation proceedings were necessary, the School District would call on Psota to testify with respect to the value of the property as the School District's expert. Walter R. Kiernan (hereinafter Kiernan), attorney for the School District, stated in a letter [2] to petitioners' counsel that he was of the opinion that the $19,500 value of Psota's appraisal was less than the award which the property would have brought in a condemnation proceeding if one were necessary. Kiernan also said that he was prepared to request authority from the Board of Education to exceed the appraisal value of Nancy's land since it represented frontage. *45 Since the School District needed Nancy's parcel for development of the school site, it sought out petitioners to discuss acquisition of that property. On November 17, 1966 Maurice met with Kiernan to discuss the property and its acquisition by the School District, this being the first time they had met since Maurice and Nancy had been out of the country for the five weeks prior to November 14, 1966. 5 At this time, after Maurice decided he needed to know the value of the 1.399 acres, Kiernan suggested that Maurice retain Psota as his appraiser. After a request by Maurice to render an appraisal and without any discussion as to what figure the appraisal should be, Psota thereafter submitted his appraisal to Maurice and Nancy, on November 22, 1966, with the value of $19,500 for the 1.399 acres. On December 29, 1966 Richard and Elisabeth Nicodemus jointly executed a deed conveying their 10.743 acre parcel, adjoining the property in question on the south, to the School District for the consideration of $59,086.50. The parcel of land in question here was part of a large piece of property of over 80 acres owned by Nancy. The 1.399 acres donated to the School District by Nancy *46 consisted of a wooded plot of approximately a one acre block on the west, and a narrow triangular strip of approximately .399 acres and about 650 feet in length extending to the east, and lying along the southerly side of Landing Meadow Road. This 1.399 acre parcel was situated to the north of and adjoining the 10.743 acres of Nicodemus property which was purchased by the School District. The triangular strip of land had a width of from 35 feet to zero feet, or an average of 17 1/2 feet, and by itself could not be built upon because of the local one acre 6 minimum zoning requirement. Directly opposite this strip and across Landing Meadow Road was the balance of Nancy's property. The Nicodemus' 10.743 acres had a total frontage on a southerly bend of Landing Meadow Road of approximately 372 feet compared with a total frontage on said road of 809 feet for Nancy's 1.399 acre parcel. Development of the Nicodemus property would require construction of a road on that property which would connect at some point to Landing Meadow Road. Because of the decline in elevation from the northwest corner to the southeast corner of said property, construction of the road would require a material *47 amount of extra fill if constructed so that it connected with Landing Meadow Road on the Nicodemus frontage but would not if the road were constructed over Nancy's strip of land. The latter road would also be some 300 feet shorter. Construction of the road to the Nicodemus frontage would also require dedication of some 17 feet of that property along the 350 foot frontage for the purpose of widening Landing Meadow Road. After acquisition of the site by the School District, the school was constructed in the northwest corner of the Nicodemus property, and the access drive was constructed across Nancy's property. The Nicodemus' had offered to trade some of their land for this triangular strip in order to provide their land with more frontage and accessibility. 7 The average fair market value of an acre of land in the vicinity of the land in question in Smithtown, New York as of December 21, 1966, was $7,000. The highest and best use of the property in question was for residential development. On their joint Federal income tax return for the taxable year 1966 Maurice and Nancy deducted $19,500 as the value of the charitable donation of the 1.399 acres to the School District. *48 The respondent disallowed said deduction to the extent of $9,500, this disallowance being based upon his determination that the property had a value of not more than $10,000. Along with the land which Nancy inherited in 1957 was a residence house which is the subject of the depreciation deduction claim herein. The house was at least 50 years old and may have been built in 1800's. The valuation of the house for Federal extate tax purposes was unknown.The basis for depreciation purposes was estimated by petitioners' counsel, who himself had never seen the house, at $15,065, this figure having been taken from a local tax assessor's valuation on a tax assessment bill. The tax bill itself was not presented to the Court and the year of the tax bill was unknown, it being no later than 1962 and possibly earlier. The respondent, for the taxable year 1962, in a conference report of a revenue agent dated October 25, 1966, allowed a depreciation deduction for said house in the amount of $753.25 with the statement 8 to the effect that information and substantiation was submitted which permitted a finding that for the taxable year 1962 said property was "held for the production of income" *49 and that the "proved deduction" for depreciation of $753.25, along with maintenance expenses and a loss, would be allowed. For the taxable year in question the respondent allowed other deductions such as maintenance, repair and legal expenses relating to said property which were claimed on petitioners' Federal income tax return. As previously noted, the petitioners did not claim a deduction for depreciation in their return as filed for 1966. Since inheritance in 1957 and until the year in question, the house has not been used as a personal residence. It has been used on some weekends during which Maurice went there to straighten out Nancy's father's records for the estate or to ensure that the property was being properly maintained.Maurice and Nancy kept no clothing there, never spent vacations there, and were not members of any local clubs. On infreguent occasions friends were brought out to see the wildlife on the property, but they never stayed for a meal. The house was never offered for rent. Since inheritance by Nancy in 1957, the property was being held for investment and was offered for sale only, and it had appreciated in value. 9 OPINION In the first issue *50 there is no question that the Central School District No. 1 of the town of Smithtown, New York is a qualified organization within the purview of section 170(c). The only dispute relates to the amount of the deduction for purposes of section 170 which Nancy may claim for making her contribution to such a qualified organization. This dispute requires our determination of the fair market value of Nancy's contribution of the 1.399 acres of land on December 21, 1966, the date the property was donated to the School District. With respect to contributions of property, section 1.170-1(c) (1) of the Income Tax Regs. provides in part: (c) * * * (1) General rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * * The petitioners contend that the fair market value of the property on December 21, 1966, was $19,500, which amount they entered *51 as a deduction on their 1966 Federal income tax return. The respondent determined that the property had a value of not more than $10,000 on that date. The question as to fair market value is one of fact. In our determination of this question, the burden rests on 10 the petitioners to prove that the property had a fair market value in excess of that determined by the respondent. Rule 32, Tax Court Rules of Practice. However, where competent evidence is introduced to rebut the presumption of correctness of the respondent's determination, the issue must be resolved after consideration of all the relevant evidence in the record. Danisl S. McGuire, 44 T.C. 801 at 806-807 (1965). The record in this proceeding contains extensive evidence pertaining to this 1.399 acre parcel, and both petitioners and respondent presented expert testimony concerning its value on the date of the gift. Careful consideration has been given to the methods of evaluation used by each expert; the extent of the personal knowledge of each with regard to the particular land on the valuation date; and the thoroughness with wich each appraiser examined the factors relevant to the valuation, as *52 well as the unique characteristics of this particular parcel. In support of their position, petitioners contend that the evidence presented established the likelihood that the School District would have purchased Nancy's property for at least $19,500 had not there been a gift of the property. Offers from a willing buyer are evidence which has been considered in determining fair market value. See William Brill, 20 B.T.A. 495 (1930), Halbert K. Hitchcock, 4 B.T.A. 273 (1926). The petitioners point to the facts that the School District sought out the two property owners to purchase 11 the two parcels for the site and that the Nicodemus property was actually purchased by the School District for an amount close to the appraisal value determined by the School District's appraiser. They would conclude that since the School District accepted its appraiser's valuation for the Nicodemus property, it would also accept his valuation for Nancy's property. Petitioners further point to the letter written by the School District's counsel to petitioners' counsel in which it was stated that Kiernan, the School District's counsel, believed the $19,500 appraisal to *53 be less than the amount which petitioners would receive in a condemnation proceeding and that Kiernan would request authority from the School District to exceed the appraisal value since Nancy's land represented frontage. We recognize here that administrative bodies such as a school district, because of their lack of knowledge in certain areas, must necessarily rely upon professional advice to provide the basis for their decisions. Recognizing this necessary reliance upon professional advice, we conclude from the evidence presented here that petitioners have established the likelihood that the School District would have purchased Nancy's parcel for $19,500 had not she made a gift of that property. Respondent argues that any probable offer from the School District should not be considered as evidence of fair market value because the School District was not a willing buyer. Respondent contends that because Nancy's parcel was believed 12 to be essential to development of the Nicodemus property as a school site, the School District was under compulsion to obtain that property and hence could not be a willing buyer. Respondent here confuses desirability and value with compulsion. *54 Furthermore, it is hard to imagine the School District being under compulsion to buy as it had the power of condemnation by which it could receive the land at a judicially determined fair market value if Nancy held out for an unreasonable price. In urging our acceptance of their appraiser's opinion, the petitioners further point out that this witness fixed such value in an appraisal made at the request of the School District, and not at the request of petitioners, in anticipation of purchase of the land by the School District and before the School District had contacted the petitioners in regard to this land. We are satisfied that petitioners' expert was a qualified and creditable witness and that his opinion is valuable as being independent and unbiased. The real estate appraiser called by the respondent testified that he made his appraisal over four years after the valuation date but that he was familiar with property in the area of the parcel in question as of the valuation date and that he related his appraisal to the valuation date. This witness testified that he valued the one acre block on the west end of Nancy's parcel at $7,000 and that the .399 acre strip 13 of *55 frontage, being only an average of 17 feet wide and not, in his opinion, being necessary to the development of the Nicodemus property, at $1,000. Respondent's appraiser offered testimony and drawings of lot layouts of the Nicodemus property with and without use of Nancy's parcel. He felt these layouts showed that Nancy's parcel was not necessary to the development of the Nicodemus property. As this witness was not an expert in subdividing land, and by his own admission his drawings were estimations or "doodles" which would be subject to an engineer's refinement, this testimony is entitled to little weight. In fact, while this witness stated that Nancy's parcel was of no value, and possibly a detriment, to the development of the Nicodemus property, Maurice stated that Richard Nicodemus had attempted to trade some of his other property for this parcel. An expert's opinion is entitled to substantial weight only if it is supported by the facts. M. Pauline Casey, 38 T.C. 357, 381 (1962). After considering all the evidence, including the expert testimony, and discussing some of the salient factors herein, we find that Nancy's 1.399 acres was a key and critical piece *56 of land because of its frontage. Realizing that it is impossible to determine the value of land with mathematical certainty, we conclude that the fair market value of the land in issue was $19,500 on December 21, 1966. 14 The second issue involves the question as to whether petitioners are entitled to a depreciation deduction, in the amount of $753.25, for the taxable year 1966 on a frame residence situated on property located in Smithtown, New York. This property was inherited by Nancy in 1957 and held for investment and offered for sale without personal use by the petitioners. Section 167(a) provides as follows: (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income. Such reasonable allowance is the sum which should be set aside for the taxable year in order that, at the end of the useful life of the asset, the aggregate of sums set aside will, with any salvage value, suffice to provide an amount equal to the original cost or basis to the *57 taxpayer. United States v. Ludey, 274 U.S. 295 (1927). Consequently, in the computation of any allowance for depreciation, the essential elements of basis, useful life, salvage value and amount of depreciation previously claimed must be known. In this regard, the burden of proof rests upon the petitioner to sustain a deduction claimed. Cf. Welch v. Helvering, 290 U.S. 111 (1933); Burnet v. Houston, 15 283 U.S. 223 (1931). Thus petitioner must establish the necessary elements to support his claim for depreciation before the deduction can be allowed by this Court. C. C. Chalfant, Exr., 19 B.T.A. 442 (1930). With respect to the basis for depreciation, section 167(g) provides: (g) Basis for Depreciation. - The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 1011 for the purpose of determining the gain on the sale or other disposition of such property. Since Nancy acquired this property by inheritance, we are directed through section 1011 to section 1014 which provides in pertinent part as follows: (a) In General. *58 - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death. * * * (b) Property Acquired From The Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent: (1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent; Thus, to establish the basis for depreciation, petitioners must show what the fair market value of the house was in 1957 upon inheritance. 16 Since the petitioners did not know the amount at which this house was valued for Federal estate tax purposes, other evidence as to value was presented. The petitioners have introduced into evidence a conference report of a revenue agent which allowed a depreciation deduction in the amount of $753.25 as a "proved deduction" for the taxable year 1962. It should be noted that this report only *59 stated the amount of the deduction allowed and not the basis and useful life of the asset. However, petitioners' counsel testified that he represented petitioners at the conference and that a basis of $15,065 and a useful life of twenty years was accepted there. While we have no reason to doubt petitioners' counsel's testimony and while the basis of the house may well have been proved to the satisfaction of the revenue agent, still we must be presented with some direct evidence of value so that we can make our own independent determination. The respondent has placed the basis in issue and we must determine the question anew from the evidence presented to us. The fact that a revenue agent's report accepted the amount of depreciation claimed is not binding on the respondent nor upon us. M. Pauline Casey, supra, at 381. We will, however, accept this report as corroborative of other competent evidence as to basis which is presented to us. Petitioners' counsel testified further that he used the $15,065 basis because that was the amount at which the house 17 was assessed on a local tax bill. This local tax bill was not introduced into evidence. This Court has, *60 in the past, been presented with such evidence and has decided that a value placed upon property for the purpose of local taxation, unsupported by any other evidence, cannot be accepted as determinative of fair market value for Federal income tax purposes, particularly in the absence of evidence of the method and purpose for which the assessment was made. Helen D. Emmet, 11 T.C. 90 (1948); Helen Barclay, Exrx., 4 B.T.A. 1139 (1926). Here, petitioners' case is further weakened by their counsel's testimony that the year of the tax bill was unknown, it being no later than 1962 and possibly earlier. Petitioners have assumed that the fair market value as of the date of inheritance in 1957 is equivalent to or is approximated by a local tax assessor's valuation of an unknown date. No evidence as to the size of the house or its general condition of repair in 1957 was presented. While we have said that tax bills and conference reports may be considered as corroborative in arriving at a basis for depreciation, we are not justified in making an estimate with respect to the fair market value of the house at the time of inheritance in 1957 based upon a tax bill of *61 uncertain date and a conference report containing no details. As the basis of the residence for depreciation has not been established, the petitioners are not entitled to an allowance for depreciation. 18 As we have decided against petitioners for insufficiency of evidence on the depreciation claim, we need not consider respondent's further arguments that the residence was not held for the production of income or that depreciation would not be allowable in the case of investment property held for sale only. Decision of no deficiency and no overpayment will be entered. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. This letter was accepted into evidence for the limited purpose of showing what Kiernan would do or recommend, and not what the School District would do with respect to the land in issue. ↩