T.C. Memo. 2012-212

UNITED STATES TAX COURT

BERNARD R. SHEPHERD AND DESIREE SHEPHERD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26910-10.                    Filed July 24, 2012.

Bernard R. Shepherd and Desiree Shepherd, pro sese.

<u>Kristina L. Rico</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined a $1,613 deficiency in petitioners'

2008 Federal income tax.  The issue for decision is whether petitioners are entitled

to exclude from gross income under section 108(a)(1)(B)[1] discharge of indebtedness income of $4,412.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioners resided in New Jersey.

In November 2007 petitioners' credit card company, Capital One Bank (USA) N.A. (Capital One), referred petitioners' delinquent account to an outside collection agency. The principal loan balance due on petitioners' Capital One account at the time of the referral was $9,962.06. Petitioners entered into a settlement agreement with the outside collection agency, agreeing to settle their Capital One loan balance for $5,550. Petitioners made payments totaling $5,550 from March 28 to July 30, 2008. The outside collection agency then notified Capital One that petitioners had paid the full amount required by the settlement agreement. Capital One coded petitioners' account as "Settled in Full" and discharged the remaining liability on September 3, 2008.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In January 2009 Capital One issued to Mr. Shepherd a Form 1099-C, Cancellation of Debt, showing that $4,412 of indebtedness had been canceled on September 3, 2008. Petitioners did not report the $4,412 as income on their 2008 joint Federal income tax return.

The parties did not dispute the fair market values of the following of petitioners' assets immediately before petitioners' discharge:

| Asset | Fair Market Value |
|---|---|
| Cash | $300.00 |
| Cars | 12,550.00 |
| Computers | 100.00 |
| Household goods | 2,100.00 |
| Tools | 50.00 |
| Jewelry | 4,000.00 |
| Clothing | 350.00 |
| Books | 25.00 |
| Life insurance | 1,108.24 |
| Investments | 10,223.79 |
| Boat | 300.00 |
| Total | 31,107.03 |

Likewise, the parties did not dispute the amounts of the following of petitioners' liabilities:

| Liability | Amount |
|---|---|
| Principal residence mortgage | $555,015.31 |
| Beach house mortgage | 177,535.00 |

| | |
|---|---|
| Real estate taxes | 14,091.24 |
| Credit card debt | 25,659.43 |
| Car debt | 8,519.98 |
| Utilities | 1,563.84 |
| Loan from New Jersey Public Employees Retirement System | 15,532.75 |
| Miscellaneous bills | 936.91 |
| Total | 798,854.46 |

The parties disagree about the values of three assets which are not included in the above lists. During 2008 petitioners owned a house in Mullica Hill, New Jersey (principal residence), and a house in Brigantine, New Jersey (beach house). Petitioners continued to own these houses at the time of trial in 2012. The parties disagree about the values of these two houses. They also disagree about the value of Mr. Shepherd's pension in the New Jersey Public Employees Retirement System (PERS).

## OPINION

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

"Income from discharge of indebtedness" is included within the broad definition of income. Sec. 61(a)(12). Section 108 provides certain exceptions to section 61(a)(12). Section 108(a)(1)(B) excludes discharge of indebtedness income

from gross income if the discharge occurs when the taxpayer is insolvent. The amount of income excluded under section 108(a)(1)(B) "shall not exceed the amount by which the taxpayer is insolvent." Sec. 108(a)(3). The term "insolvent" means "the excess of liabilities over the fair market value of assets." Sec. 108(d)(3). Whether a taxpayer is insolvent, and the amount by which the taxpayer is insolvent, is "determined on the basis of the taxpayer's assets and liabilities immediately before the discharge." Id.

Respondent acknowledges that petitioners correctly listed the fair market values of most of their assets and liabilities. Petitioners and respondent dispute whether petitioners met their burden of proving the fair market values of the beach house and the principal residence, which were petitioners' largest assets. Additionally, petitioners and respondent dispute whether Mr. Shepherd's pension is an asset for purposes of determining whether petitioners are insolvent under section 108(d)(3).

Burden of Proof Regarding the Fair Market Values of the Beach House and the Principal Residence

"The burden of proving insolvency under section 108(a)(1)(B) is on petitioners." Bressi v. Commissioner, T.C. Memo. 1991-651, 1991 Tax Ct. Memo LEXIS 693, at *18 (citing Rule 142(a) and Welch v. Helvering, 290 U.S. 111, 115

(1933)), aff'd without published opinion, 989 F.2d 486 (3d Cir. 1993). Therefore, petitioners have the burden of proving the fair market value of all their assets immediately before the discharge.[2] See sec. 108(d)(3).

Beach House

Respondent argues that petitioners have not met their burden of proving the fair market value of their beach house immediately before the discharge. Petitioners contend they offered sufficient evidence to prove that the fair market value of the beach house was approximately $340,000.[3]

To support the fair market value of their beach house petitioners offered into evidence a "Civil Action Stipulation of Settlement" (settlement) between petitioners and the City of Brigantine. The settlement provides that the value of the beach house for local property tax purposes is $380,000 for the 2010 tax year. Petitioners signed the settlement on May 16, 2011.

---

[2]In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under sec. 7491(a). However, petitioners have not argued that the burden of proof should shift to respondent, nor have they produced credible evidence as required by sec. 7491(a)(1). Therefore, we hold that the burden of proof does not shift to respondent.

[3]At trial Mr. Shepherd testified that petitioners purchased the beach house in 1996 for $118,000. Petitioners offered into evidence a Wells Fargo monthly mortgage statement for the beach house loan showing the unpaid principal balance of $177,539.03 on December 18, 2008.

"This Court has held previously that a value placed upon property for the purpose of local taxation, unsupported by other evidence, cannot be accepted as determinative of fair market value for Federal income tax purposes in the absence of evidence of the method used in arriving at that valuation." Pierce v. Commissioner, 61 T.C. 424, 431 n.6 (1974); see Gilmartin v. Commissioner, T.C. Memo. 1973-247, 1973 Tax Ct. Memo LEXIS 40, at *20-21; Bishop v. Commissioner, T.C. Memo. 1962-146, 1962 Tax Ct. Memo LEXIS 163, at *61. The settlement does not describe the beach house nor the method used to determine the value of the beach house. Additionally, the settlement shows the beach house's valuation for tax purposes for 2010, whereas petitioners' debt was discharged on September 3, 2008. As a result, we find that the settlement is not convincing evidence of the fair market value of the beach house immediately before petitioners' discharge.

At trial Mr. Shepherd testified that in his opinion the value of the beach house immediately before the discharge was approximately $340,000. Mr. Shepherd's valuation testimony was allegedly based on comparable sales that he assembled for the purpose of a property tax appeal. Apparently, this was for the 2010 tax year, which was at least two years after the discharge on September 3, 2008. While comparable sales can be persuasive evidence of fair market value, see First Nat'l

Bank of Kenosha v. United States, 763 F.2d 891, 896 (7th Cir. 1985), petitioners neither offered into evidence nor described in detail the comparable sales or their dates. In order to corroborate Mr. Shepherd's testimony, the Court would need to review the comparable sales to determine whether a proper valuation methodology was used and that the comparable sales occurred in close proximity to the date of discharge. As a result, we find that Mr. Shepherd's testimony is not convincing evidence of the fair market value of the beach house immediately before petitioners' discharge.

Accordingly, we find that petitioners did not meet their burden of proving the fair market value of the beach house immediately before the discharge.

Principal Residence

Respondent argues that petitioners have not met their burden of proving the fair market value of the principal residence immediately before the discharge. Petitioners contend they offered sufficient evidence to prove that the fair market value of the principal residence was $380,000 immediately before the discharge.[4]

---

[4]At trial Mr. Shepherd testified that petitioners obtained a $580,000 mortgage on the principal residence in 2005. Mr. Shepherd further testified that in 2005 the approximate appraised value of the principal residence was $750,000. Petitioners offered into evidence a Chase monthly mortgage statement showing the unpaid principal balance on the principal residence loan was $555,015.31 on August 15, 2008.

Petitioners offered the following evidence to support their valuation: (1) a letter dated March 29, 2011, from Chase Home Finance LLC (Chase) showing the value of the principal residence; and (2) a "2008 Final/2009 Preliminary Tax Bill" (tax bill).

Petitioners applied for a loan modification for the principal residence through the Federal Home Affordable Modification Program (HAMP). As part of Chase's review to determine whether petitioners' loan qualified for a HAMP modification, Chase had to value petitioners' principal residence. In a letter Chase informed petitioners that an "exterior broker price opinion/appraisal"[5] was used to value the property as of March 2011 at $380,000.

Section 108(d)(3) requires that the fair market value of a taxpayer's assets be determined "immediately before the discharge." Chase determined the fair market value of the principal residence as of March 2011, almost three years after the date of petitioners' discharge.[6] Furthermore, the letter from Chase does not describe the property nor explain, even briefly, the methodology used to determine its value. We find that Chase's valuation of the principal residence as of March 2011 is not

[5]The letter from Chase does not explain what "exterior broker price opinion/appraisal" means.

[6]We take judicial notice of the large downturn in national residential real estate values that occurred after September 2008.

convincing evidence of the fair market value of the principal residence immediately before petitioners' discharge.

Petitioners offered into evidence a tax bill they received for their principal residence. The tax bill shows a net taxable value of $337,700 for petitioners' principal residence. The tax bill does not describe the property in detail nor the methodology used in determining the tax value. As we noted earlier, a value placed upon property for local taxation purposes is not determinative of fair market value of the property for Federal income tax purposes in the absence of evidence of the method used in arriving at that valuation. See Pierce v. Commissioner, 61 T.C. at 431 n.6; Gilmartin v. Commissioner, 1973 Tax Ct. Memo LEXIS 40, at *20-21; Bishop v. Commissioner, 1962 Tax Ct. Memo LEXIS 163, at *61.

Furthermore, in New Jersey the assessed value of property is generally not equivalent to the fair market value of the property. See City of Passaic v. Passaic Cnty. Bd. of Taxation, 113 A.2d 753, 756 (1955) ("There has been general agreement for over a century that individual property valuations and assessments have been and are marred by the grossest inequities."). In fact, the statutory framework for property assessments in New Jersey specifically contemplates that the assessed value of a property for tax purposes will not be equivalent to the fair

market value of the property.  See N.J. Stat. Ann. sec. 54:3-17 (West 2002) (each county tax administrator must annually determine the "ratio or percentage of true value at which the real property of each taxing district is in fact assessed"); id. sec. 54:1-35.3 (The director of the division of taxation must determine the "ratio of aggregate assessed to aggregate true valuation of real estate of each taxing district.").

We find that the tax bill is not convincing evidence of the fair market value of the principal residence.  We further find that petitioners have not met their burden of proving the fair market values of the principal residence and the beach house immediately before the discharge.  Accordingly, petitioners have failed to establish that they were insolvent as defined in section 108(d)(3).

Mr. Shepherd's Pension

We have previously found that petitioners were not insolvent as defined in section 108(d)(3) because they failed to meet their burden of proving the fair market values of the beach house and the principal residence.  Nevertheless, we will discuss whether Mr. Shepherd's pension is an asset because the parties have discussed this issue extensively.

Petitioners contend that Mr. Shepherd's pension is not an asset for purposes of determining insolvency under section 108(d)(3).  Respondent disagrees.

Mr. Shepherd is employed by Gloucester township and is a contributing member of PERS. On March 21, 2007, Mr. Shepherd obtained a $21,973.30 loan from PERS against his pension. Mr. Shepherd testified that this amount was the maximum he could borrow from PERS. On May 1, 2007, Mr. Shepherd made his first of 58 monthly loan repayments of $378.85 to PERS. Mr. Shepherd continued making contributions to his pension after he received the loan.

Petitioners classified Mr. Shepherd's loan from PERS as a liability under section 108(d)(3). We note that it is wholly inconsistent to show a loan as a liability if the loan is fully secured by collateral and the collateral is not listed as an asset. By including the loan and not the underlying collateral, petitioners are presenting themselves as more insolvent than the reality of the matter. For consistency purposes, petitioners must either remove the loan as a liability or include the collateral that secures the loan as an asset.

The term "insolvent" means "the excess of liabilities over the fair market value of assets." Sec. 108(d)(3). This Court has held that the word "assets" as used in the definition of the term "insolvent" for section 108(d)(3) includes "assets exempt from the claims of creditors under applicable State law." Carlson v. Commissioner, 116 T.C. 87, 105 (2001). We reasoned that if a debtor's assets, including assets exempt from the claims of creditors under State law, exceed

liabilities, then the debtor has the ability to pay a tax on income from the discharge of indebtedness.  Id. at 104.  Mr. Shepherd's pension is exempt from claims of creditors under New Jersey State law.  See N.J. Stat. Ann. sec. 25:2-1 (West 1997 & Supp. 2012).  Under the Court's holding in Carlson, Mr. Shepherd's pension will not escape classification as an asset under section 108(d)(3) solely because of its exemption from claims of creditors.

Mr. Shepherd had the ability to withdraw some portion of his pension on the date of petitioners' discharge.  A member of PERS "may borrow from the retirement system, an amount equal to not more than 50% of the amount of his accumulated deductions".  N.J. Stat. Ann. sec. 43:15A-34 (West 1991 & Supp. 2012).  A member of PERS may have more than one loan outstanding at any time.  See id.  Mr. Shepherd continued making contributions to his pension with PERS every pay period from the date he received the loan from PERS to the date of petitioners' discharge.  Additionally, during this period Mr. Shepherd made monthly loan repayments of $378.85 to PERS.  In other words, Mr. Shepherd's loan balance with PERS decreased from the date he obtained the loan to the date of petitioners' discharge while his accumulated contributions to his pension increased over that period.  Therefore, we note that Mr. Shepherd's outstanding loan balance on the date of petitioners' discharge must have been less than 50% of his accumulated

contributions to his pension.  As a result, Mr. Shepherd had the right to immediately withdraw some portion of his accumulated contributions as a loan from his pension with PERS immediately before petitioners' discharge of indebtedness.  We find that the portion of Mr. Shepherd's pension that could have been withdrawn as a loan from PERS is an asset for purposes of insolvency under section 108(d)(3).[7]

Petitioners did not provide any evidence of Mr. Shepherd's accumulated contributions to the pension immediately before the discharge.  Therefore, we are unable to determine what portion of Mr. Shepherd's pension could have been withdrawn as a loan.  Accordingly, we find that petitioners have not met their burden of proving the fair market value of the portion of Mr. Shepherd's pension that constitutes an asset.

Conclusion

Section 108(d)(3) requires that a taxpayer establish the fair market value for all of his assets and liabilities in order to make a determination of insolvency.  If we were to accept petitioners' valuation of their houses and exclude from liabilities the loan from PERS, petitioners would be approximately $32,000 insolvent.  However,

---

[7]Therefore, it is unnecessary for us to decide whether Mr. Shepherd's entire pension constitutes an asset under sec. 108(d)(3).

petitioners have not met their burden of proving the fair market values of the beach house, the principal residence, and Mr. Shepherd's pension. Since petitioners have not established they were insolvent as defined in section 108(d)(3), petitioners are not entitled to exclude their discharge of indebtedness income from gross income under section 108(a)(1)(B).

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.