T.C. Memo. 2017-32

UNITED STATES TAX COURT

DAVID W. SCHIEBER AND JANET L. SCHIEBER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21690-14.                    Filed February 9, 2017.

<u>Steven Ray Mather</u>, for petitioners.

<u>Lori A. Amadei</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  Respondent (hereinafter the IRS) issued the

petitioners, David W. Schieber and Janet L. Schieber, a notice of deficiency for the

2009 tax year.  In the notice, the IRS determined that the Schiebers (1) had a

$129,509 deficiency in income tax and (2) were liable for a $25,902 section-6662

**[\*2]** penalty.[1]  The Schiebers timely filed a petition under section 6213(a) for redetermination of the deficiency and the penalty.[2]  We have jurisdiction under section 6214(a).

This case involves the tax treatment of a canceled debt.  Section 61(a)(12) defines "gross income"[3] to include income from cancellation of debt.[4]  This rule is subject to certain exceptions found in section 108(a)(1).  See Gitlitz v. Commissioner, 531 U.S. 206, 213 (2001).  One such exception is in section 108(a)(1)(B), which excludes from gross income any amount that would otherwise be includable by reason of the cancellation of the taxpayer's debt, in whole or in part, if the cancellation occurs when the taxpayer is insolvent.  Section 108(a)(3)

---

[1]Unless otherwise indicated, all references to sections are to the Internal Revenue Code in effect for the 2009 tax year.  All references to Rules are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]The Schiebers resided in California when they filed the petition.  Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Ninth Circuit unless the parties designate the Court of Appeals for another circuit in writing.  See sec. 7482(b)(1) and (2).

[3]The concept of gross income is significant because taxable income is the difference between gross income and deductions.  Sec. 63(a).  The amount of tax depends on the amount of taxable income.  Sec. 1(d).  Thus, if an amount is included in gross income, the tax liability is greater than if it were not included.

[4]The Internal Revenue Code refers to income from canceled debt as income from the "discharge of indebtedness".  Secs. 61(a)(12), 108(a)(1).

[*3] provides that the amount of income excluded under section 108(a)(1)(B) "shall not exceed the amount by which the taxpayer is insolvent." The term "insolvent" is defined by section 108(d)(3) as "the excess of liabilities over the fair market value of assets." Whether and by how much a taxpayer is insolvent is "determined on the basis of the taxpayer's assets and liabilities immediately before" the cancellation of debt. Sec. 108(d)(3).

The sole issue in this case is whether the Schiebers' interest in a California Public Employees' Retirement System (CalPERS) defined benefit pension plan is considered an asset in determining (1) whether they were insolvent on June 30, 2009, the date the debt was canceled, and (2) the amount of their insolvency. When the debt was canceled, Mr. Schieber was retired and was receiving monthly payments under the pension plan. In the event of Mr. Schieber's death, Mrs. Schieber had a right to receive the monthly payments. Other than the right to receive the monthly payments, the Schiebers could not access the value in the plan. They could not convert their interest in the plan to a lump-sum cash amount, sell the interest, assign the interest, borrow against the interest, or borrow from the plan. We therefore hold that the Schiebers' interest in the pension plan is not an asset for the purposes of determining whether they were insolvent and the amount of their insolvency. See id.

**[*4]**                          FINDINGS OF FACT

The parties have agreed to a stipulation of facts.  We adopt, as our findings

of fact, the statements in the stipulation of facts.  Other findings of fact are based

on documentary evidence stipulated as admissible by the parties.[5]

The pension plan

Mr. Schieber worked as a police officer for the city of Bakersfield,

California, for 25 years.  He participated in a defined benefit pension plan through

CalPERS.  On August 20, 2005, he retired.  At retirement he was entitled to

monthly distributions from the pension plan.  He started receiving monthly

payments from the pension plan in 2005.  The pension plan withheld federal

income tax from the payments.  Therefore the payments were net of federal

income tax withholding.  If Mr. Schieber had died, Mrs. Schieber would have been

entitled to receive the monthly payments until her death.  The Schiebers could not

convert their interest in the pension plan into a lump-sum cash amount, assign the

interest, sell the interest, borrow against the interest, or borrow from the plan.

---

[5]Our findings of fact are based on the preponderance of the evidence.
Therefore, it is not necessary to determine which party bears the burden of proof.
Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

[*5]   The monthly distribution amount increased approximately 2% per year because of cost of living adjustments.  The annual increase took place each May. For 2009 through 2015 the amounts of the monthly distributions were:

| Period | Monthly payment |
| --- | --- |
| Jan. 2009 through Apr. 2009 | $4,986 |
| May 2009 through Apr. 2010 | 5,086 |
| May 2010 through Apr. 2011 | 5,187 |
| May 2011 through Apr. 2012 | 5,291 |
| May 2012 through Apr. 2013 | 5,397 |
| May 2013 through Apr. 2014 | 5,505 |
| May 2014 through Apr. 2015 | 5,615 |
| May 2015 through Nov. 2015 | 5,728 |

The cancellation of debt on June 30, 2009

The Schiebers were not in bankruptcy during 2009.  On June 30, 2009, Mr. Schieber was 65 years old and Mrs. Schieber was 61 years old.

On June 30, 2009, the fair market value of the assets owned by the Schiebers, other than the interest in the pension plan, was $924,919, as the parties have stipulated.  One of the Schiebers' assets was a property at 21718 Stockdale Highway, Bakersfield, California, which had a value of $389,803.  The Stockdale Highway property was not the Schiebers' primary residence.

**[\*6]**   On June 30, 2009, the Schiebers' liabilities totaled $1,218,227, as the parties have stipulated.  Among the liabilities was $906,532 of debt secured by the Stockdale Highway property.  The lender (or one of the lenders) of this $906,532 debt was GMAC Mortgage.

On June 30, 2009, GMAC Mortgage canceled $448,671 of the Schiebers' debt that was secured by Stockdale Highway property.[6]  The $448,671 of canceled debt consisted of $418,596 of principal and $30,076 of interest.[7]

Tax reporting

The Schiebers filed a federal income tax return for 2009 using Form 1040, "U.S. Individual Income Tax Return".  On this return they did not report the $30,076 of interest canceled by GMAC Mortgage because they never deducted it and therefore it is not includable in gross income under section 108(e)(2).[8]  As to the $418,596 of principal that was canceled, the Schiebers reported that they were

---

[6]The record does not reveal whether the $448,671 was the entire debt held by GMAC Mortgage against the Stockdale Highway property or merely a portion. We know only that $448,671 is the amount of debt canceled by GMAC Mortgage that was secured by the property.

[7]Without rounding the numbers to the nearest dollar, the calculation is $448,671.44 = $418,595.77 + $30,075.67.

[8]Sec. 108(e)(2) provides that no income is realized from cancellation of debt "to the extent that payment of the liability would have given rise to a deduction."

**[\*7]** insolvent when this amount was canceled, that the amount of their insolvency was $346,418, and that therefore $346,418 of the $418,596 of canceled debt was excludable from income.[9] They reported that the remainder of the $418,596, i.e., $72,178, was includable in their income.

The notice of deficiency and the positions of the parties

In the notice of deficiency, the IRS determined that the $30,076 interest component of the GMAC Mortgage debt cancellation was canceled-debt income. However, the IRS has conceded that the $30,076 is not includable in income under section 108(e)(2). Therefore, we need not resolve the question of whether the Schiebers realized canceled-debt income from the cancellation of the $30,076 interest component.

In the notice of deficiency, the IRS determined that the entire $418,596 principal component of the GMAC Mortgage debt cancellation was canceled-debt income. After the Schiebers filed their petition, the Schiebers and the IRS executed a stipulation of facts, executed a stipulation of settled issues (which contains concessions), and moved that the case be decided without trial under Rule 122. The Court granted the Rule 122 motion.

---

[9]The record does not reveal how the Schiebers calculated the $346,418.

**[*8]** The IRS contends that the Schiebers' interest in the pension plan should be considered an asset for the purpose of the insolvency exclusion. In the event the Court considers their interest in the pension plan to be an asset, the Schiebers concede that they were not insolvent immediately before the cancellation of the GMAC Mortgage debt and that they would be required to include the entire $418,596 in their income.

The Schiebers contend that their interest in the pension plan should not be considered an asset for the purpose of the insolvency exception. Without the pension plan, the Schiebers' assets are stipulated to have been worth $924,919. Their total debts are stipulated to have been $1,218,227. Thus, without their interest in the pension plan as an asset, they would be insolvent in the amount of $293,308 and would be entitled to exclude $293,308 of the $418,596 from their income. The IRS does not dispute that $293,308 would be the amount of the exclusion in the event that the Schiebers' interest in the pension plan is not considered an asset. The Schiebers originally reported on their return that the exclusion for insolvency was $346,418, but their position now is that it is $293,308.

**[*9]** The parties' positions are summarized below:

| Item | If the interest in the pension plan is considered an asset | If the interest in the pension plan is not considered an asset |
|---|---|---|
| Value of assets other than interest in plan | $924,919 | $924,919 |
| Value of interest in plan | Not stipulated | Not stipulated |
| Liabilities | 1,218,227 | 1,218,227 |
| Amount of insolvency before $418,596 in debt principal was canceled | Not insolvent[a] | 293,308 |
| Portion of $418,596 that should be excluded from income | -0- | 293,308 |
| Portion of $418,596 that should be included in income | 418,596 | 125,288[b] |

[a]The parties are in agreement that the Schiebers were not insolvent if the interest in the pension plan is considered an asset. This agreement implicitly assumes that the value of the plan, if it is considered an asset, exceeds $293,308.
[b]$125,288 is the difference between $418,596 and $293,308.

As explained below, we agree with the Schiebers that their interest in the pension plan is not an asset for the purpose of the insolvency exclusion. Therefore they are entitled to exclude $293,308 of the $418,596 of canceled principal from their income.

**[*10]** The IRS concedes that the Schiebers are not liable for the section-6662 penalty. Therefore we need not consider the issue of the Schiebers' liability for that penalty.

OPINION

Section 108(d)(3) provides that a taxpayer is insolvent if, immediately before the cancellation of debt, the taxpayer's liabilities exceeded the fair market value of the taxpayer's assets. The word "assets" is not defined by the Internal Revenue Code. Carlson v. Commissioner, 116 T.C. 87, 93 & n.6 (2001). In Carlson v. Commissioner, 116 T.C. at 104-105, we held that an asset exempt from creditors could still be an asset under section 108(d)(3) because even an asset exempt from creditors can give the taxpayer "the ability to pay an immediate tax on income" from the canceled debt. By contrast, the Schiebers contend that they could not use their interest in the pension plan to immediately pay a tax liability because they were entitled only to monthly payments under the plan and could not convert their interest in the plan to a lump-sum cash amount, sell the interest, assign the interest, borrow against the interest, or borrow from the plan.

We first determine whether we should assume that this description of their rights under the plan is correct. We conclude that it is appropriate to do so. The IRS does not dispute the Schiebers' claim that they cannot access the value of the

[*11] plan beyond collecting their monthly payments. In its answering brief, the IRS explicitly chooses to dispute the relevancy of the claim, not its accuracy. It argues that the Schiebers' right to receive monthly payments causes their interest in the plan to be considered an asset. In its view, the lack of any other rights does not matter. We conclude that the IRS has waived any dispute over the correctness of the Schiebers' description of their rights under the plan.[10] Thus, we consider it established that: the Schiebers' interest in the pension plan entitles them only to monthly payments; the interest cannot be converted to a lump-sum cash amount; the interest cannot be sold; the interest cannot be assigned; the interest cannot be borrowed against; and the Schiebers cannot borrow from the plan.

---

[10]Although the IRS does not dispute the correctness of the Schiebers' description of their rights under the plan, the preponderance of the evidence supports their description. The stipulation of facts states that Mr. Schieber elected on a retirement form to receive benefits and that he chose the option under which (1) his wife would receive the same level of monthly benefits if he died and (2) the benefits would cease at the death of both of them. Furthermore, the record includes a brochure that, the parties have stipulated, describes some of the characteristics of Mr. Schieber's pension plan. This extensive brochure does not suggest that the Schiebers could convert an interest in the pension plan to a lump-sum cash amount, sell an interest in the plan, assign an interest in the plan, borrow against an interest in the plan, or borrow from the plan. Additionally, the Schiebers' description of their rights under the plan is consistent with provisions of the California laws they cite, specifically: Cal. Gov't Code sec. 21453 (West 2003 & Supp. 2017), which provides that an election to receive benefits under a CalPERS plan becomes irrevocable 30 days after the first benefit check is received, and Cal. Gov't Code sec. 21255 (West 2003), which provides that an interest in a CalPERS retirement account cannot be assigned.

**[\*12]**  As noted in the paragraph above, the IRS contends the Schiebers' interest in the pension plan should be considered an asset because they can use their monthly payments to pay liabilities.  But the test in <u>Carlson v. Commissioner</u>, 116 T.C. at 104-105, is whether the asset gives the taxpayer the ability to pay an "immediate tax on income" from the canceled debt--not to pay the tax gradually over time.  In <u>Carlson</u>, we held that a commercial fishing license could be an asset because the license could be used, in combination with other assets, to immediately pay the income tax on canceled-debt income.  <u>Id.</u>  By contrast, the Schiebers' interest in the pension plan cannot be used to immediately pay the income tax on canceled-debt income.  Therefore, we hold that the Schiebers' interest in the pension plan is not an asset within the meaning of section 108(d)(3).[11]

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

---

[11]The IRS contends that <u>Shepherd v. Commissioner</u>, T.C. Memo. 2012-212, a nonprecedential case, supports its view that the Schiebers' interest in the CalPERS pension plan is an asset.  The taxpayer in <u>Shepherd</u> was a township employee who had a pension with the New Jersey Public Employees Retirement System.  <u>Id.</u>, slip op. at 12.  The Court found that he could borrow from his pension against his accumulated contributions.  <u>Id.</u> at 13-14.  It held that the amount that he could borrow was an asset under sec. 108(d)(3).  <u>Id.</u> at 14.  The Schiebers, by contrast, could not borrow from the pension.  <u>Shepherd</u> is therefore distinguishable.

**[\*13]**  To reflect the foregoing,

Decision will be entered under

Rule 155.
