**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 7, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VINCENT C. HAMILTON and
STEPHANIE HAMILTON,

      Petitioners - Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent - Appellee.

No. 19-9000

**APPEAL FROM THE UNITED STATES
TAX COURT
(NO. 1: 008037-16)**

Paul W. Jones, Hale & Wood, LLP, Salt Lake City, Utah, for Appellants.

Julie Ciamporcero Avetta, Attorney, Tax Division (Richard E. Zuckerman, Principal Deputy Assistant Attorney General, and Francesca Ugolini, Attorney, Tax Division, with her on the brief), Department of Justice, Washington, D.C., for Appellee.

Before **TYMKOVICH**, Chief Judge, **MATHESON** and **McHUGH**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

The Internal Revenue Code permits taxpayers who demonstrate insolvency to exclude discharged debts from their taxable income. Claiming insolvency, taxpayer Vincent Hamilton accordingly sought to exclude nearly $160,000 in student loans that were forgiven in the aftermath of a disabling injury. During the same tax year, however, he had received a non-taxable partnership distribution worth more than $300,000.

His wife transferred those funds into a previously-unused savings account held nominally by their adult son. Using login credentials provided by their son, Mrs. Hamilton incrementally transferred almost $120,000 back to the joint checking account she shared with her husband. The Hamiltons used these funds to support their living expenses.

In a late-filed joint tax return, they excluded the discharged student-loan debt on the theory that Mr. Hamilton was insolvent. In calculating his assets and liabilities, however, the Hamiltons did not include the funds transferred into the savings account. Had they done so, Mr. Hamilton would not have met the criteria for insolvency; and the couple would have owed federal income tax on the student-loan discharge.

The Commissioner of Internal Revenue eventually filed a Notice of Deficiency, reasoning that the partnership distribution rendered Mr. Hamilton solvent, such that the Hamiltons were required to pay income tax on the cancelled

debt.  The Hamiltons petitioned for review from the Tax Court, which sustained both the deficiency and a significant late-filing penalty.  They timely appealed.

We AFFIRM.  The Tax Court correctly concluded that the Hamiltons exercised effective control over the funds Mrs. Hamilton had transferred into the savings account.

## I.  Background

Prior to his disabling back injury in 2008, Mr. Hamilton borrowed more than $150,000 to pay costs associated with medical school for his son.  Mrs. Hamilton, who managed the family's finances in the aftermath of his injury, subsequently sought to discharge these student-loan obligations.  Her efforts met with success, and these loans were fully discharged in 2011.

That same year, Mr. Hamilton received a non-taxable distribution worth more than $300,000 from his partnership interest in a movie-theater business.  Mrs. Hamilton transferred these funds into a previously-unused savings account held by their son, who then provided her with login credentials for the account.[1]  Throughout Tax Year 2011, she withdrew nearly $120,000 to finance household expenses for both parents.

---

[1]  Mrs. Hamilton included several thousand dollars that did not arise from the partnership distribution among the funds she transferred into the savings account.  The total value of the funds transferred exceeded $320,000.

The Hamiltons did not file a federal return for Tax Year 2011 until March 2014. Filing jointly, they reported just over $850,000 in liabilities and just under $680,000 in assets. But these figures made no mention of the funds that Mrs. Hamilton had moved into the savings account. One consequence of this omission now stands out as particularly important. Mr. Hamilton self-identified as insolvent, because—using these numbers—his liabilities exceeded his assets by roughly $170,000.[2] For this reason, the Hamiltons sought to pay no federal income tax on the discharged debt.

If they had included the partnership distribution as an asset for purposes of the insolvency determination, then Mr. Hamilton's assets (around $1,000,000, under this new math) would have outnumbered his liabilities (still $850,000) by roughly $150,000. Obviously, this calculus would deprive Mr. Hamilton of his rationale for not paying federal income tax on the cancelled debt.

The Commissioner of Internal Revenue eventually filed a Notice of Deficiency, reasoning that—because, in light of the funds contained within the savings account, Mr. Hamilton's assets outnumbered his liabilities—the couple could not exclude the discharged debt from their federal tax return. The Hamiltons disagreed, eventually taking the position that the funds Mrs. Hamilton

---

[2] As the government acknowledged during oral argument, we assess insolvency for purposes of 26 U.S.C. § 108 on an individual basis, even when taxpayers file jointly.

transferred into the savings account should be considered their son's assets, rather than their own.

The Hamiltons petitioned for review from the Tax Court, which—on the basis of this same stipulated record—applied the doctrine of "substance over form" to sustain the Notice of Deficiency. The Tax Court also sustained the late-filing penalties. On appeal, the Hamiltons primarily argue the Tax Court erred in characterizing the funds transferred into the savings account as their assets.

## II. Analysis

We review decisions of the Tax Court in the same manner as civil actions tried without a jury. *Petersen v. Comm'r*, 924 F.3d 1111, 1114 (10th Cir. 2019) (citing *Katz v. Comm'r*, 335 F.3d 1121, 1125–26 (10th Cir. 2003)); *see also* 26 U.S.C. § 7482(a)(1). We accordingly review *legal* conclusions *de novo* and *factual* determinations only for clear error.[3] *Id*. (citing same).

---

[3] Because insolvency requires a factual determination, we review the Tax Court's treatment of the cancellation-of-indebtedness income primarily for clear error. *See Merkel v. Comm'r*, 192 F.3d 844, 847 (9th Cir. 1999). The Hamiltons contend the Tax Court's denial of their claim presents a question of law, such that we must engage in *de novo* review. Notwithstanding the *legal* arguments the Hamiltons raise, the outcome of this case rests almost entirely upon the Tax Court's *factual* determination of their dominion over the assets contained within the savings account. No matter the standard of review, however, it is clear that the Hamiltons exercised effective control over the assets contained within the savings account.

### A. *Characterization of Assets*

The Hamiltons contend the Tax Court erred in characterizing the funds contained within the savings account as their assets for purposes of the insolvency inquiry. As our application of governing law to these stipulated facts will demonstrate, we disagree.

### 1. *Governing Law*

The Internal Revenue Code broadly defines gross income to encompass "all income from whatever source derived," including income from the discharge of indebtedness. 26 U.S.C. § 61(a)(11). But a narrow statutory exception permits taxpayers to exclude debt from discharged income, so long as the discharge occurs at a time when the taxpayer is insolvent. 26 U.S.C. § 108(a)(1)(B).

This exception acknowledges the reality that insolvent taxpayers will realize no income from discharge because—as a practical matter—no assets become available to the taxpayer. *See United States v. Kirby Lumber Co.*, 284 U.S. 1 (1931). For this reason, the Code also limits the exclusion of discharge-of-indebtedness income to the amount by which the taxpayer's liabilities exceed his assets. *See* 26 U.S.C. § 108(a)(3); *see also Carlson v. Comm'r*, 116 T.C. 87, 91 (2001) ("[T]he term 'insolvent' means the excess of liabilities over the fair market value of assets.") (quoting 26 U.S.C. § 108(d)(3)).

It is well-settled that the taxpayer bears the burden of demonstrating that his liabilities outnumber his assets. *E.g.*, *Shepherd v. Comm'r*, 104 T.C.M. (CCH) 108 (2012) (citations omitted). Although the Code does not expressly define the term "assets," the Tax Court has, for these purposes, construed it to include any resource that "can give the taxpayer the ability to pay an immediate tax on income from the canceled debt." *Schieber v. Comm'r*, 113 T.C.M. (CCH) 1144 (2017) (internal quotation marks omitted) (quoting *Carlson*, 116 T.C. at 104–05 (observing that even assets beyond the reach of other creditors could constitute assets for the purposes of 26 U.S.C. § 108(d)(3))).

In conducting this practical inquiry, the Internal Revenue Service may appropriately prioritize "substance over form." *E.g.*, *Frank Lyon Co. v. United States*, 435 U.S. 561, 572–73 (1978) (citations omitted). In cases where, as here, a "transferor continues to retain significant control over the property transferred," the Service may set aside niceties like formal title. *Id*. Indeed, we have repeatedly ratified the propriety of prioritizing economic reality in place of the formal characterizations taxpayers may lend transactions. *See Rogers v. United States*, 281 F.3d 1108, 1116–17 (10th Cir. 2002) ("[T]he doctrine of substance over form has been recognized in a number of our precedents.").

## 2. *Application*

The Tax Court appropriately applied the substance-over-form doctrine to characterize the disputed funds as the Hamiltons' assets for purposes of the insolvency calculation required by 26 U.S.C. § 108.  Given the evidence disclosed by the stipulated record, the Tax Court properly concluded they exercised effective ongoing control over these funds.

Prior to the transfer, the record suggests their son used this savings account rarely, if at all.  No evidence indicates the transfer represented a gift.[4]  Nor did their son pay any consideration in exchange for these funds.  Moreover, he immediately provided Mrs. Hamilton with login credentials so that she could access these funds whenever she wanted.  During Tax Year 2011, she withdrew nearly $120,000 to cover living expenses.[5]  Their son, by contrast, never withdrew any of these funds.

Although the Hamiltons now contend he *could* have changed the login credentials so as to lock out his mother, we think it *more* significant that he never did so.  *See, e.g.*, *Sanford's Estate v. Comm'r*, 308 U.S. 39, 43 (1939) ("[T]he essence of a transfer is the passage of control over the economic benefits of the

---

[4]  The record discloses none of the tax documentation one might ordinarily expect for a gift of this size.

[5]  Although only Mrs. Hamilton accessed these funds, it is undisputed that she did so to pay joint living expenses.

-8-

property rather than any technical changes in its title."). Because the Hamiltons retained effective control over the disputed funds, we conclude the Tax Court did not err.

The Hamiltons also contend that—under Utah law—their son was the sole owner of the savings account.[6] But this argument bears not at all on the substance-over-form inquiry. *See Carlson*, 116 T.C. at 104–05 (observing that assets beyond the reach of other creditors may nonetheless constitute assets for federal tax purposes). This is because "taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed." *See Sanford*, 308 U.S. at 43 (internal quotation marks and citations omitted).

The Hamiltons alternatively assert we should treat the disputed funds as separate property owned solely by Mrs. Hamilton. This argument fails for much the same reason, since—as we have seen—assets beyond the reach of ordinary creditors may nonetheless constitute assets for federal tax purposes. *See Carlson*, 116 T.C. at 104–05. Here, the vast majority of the disputed funds arose from Mr.

---

[6] On appeal, the Hamiltons advance a related argument—which they raised for the first time in their motion for reconsideration below—that the Tax Court lacked authority to apply the nominee inquiry to a deficiency proceeding. As the government observes, we ordinarily will not consider arguments previously available to litigants that were raised for the first time in post-judgment motions. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Even if we were to depart from that practice here, this argument would not disturb our conclusion that the Tax Court did not err.

Hamilton's partnership distribution; and the funds Mrs. Hamilton withdrew during Tax Year 2011 supported *both* of their living expenses. We accordingly conclude that Mr. Hamilton—with Mrs. Hamilton acting as his agent—exercised effective control over these funds. *See Sanford*, 308 U.S. at 43.

In our view, the Tax Court erred neither factually nor legally in sustaining the Notice of Deficiency.[7]

## B. The Late-Filing Penalties

As a result of their two-year delay in filing a federal return for Tax Year 2011, the Internal Revenue Service assessed the Hamiltons late-filing penalties pursuant to 26 U.S.C. § 6651(a)(1). The Tax Court sustained these penalties, concluding their failure to file stemmed from willful neglect, rather than reasonable cause. The Hamiltons also appeal that determination.

---

[7] The Hamiltons have also argued the Tax Court erred in refusing to shift the burden of persuasion to the government. Although taxpayers ordinarily must carry the burden of persuasion with respect to any claimed deduction, a statutory exception may shift this presumption back to the government on factual issues the taxpayer supports with credible evidence. *E.g.*, *Esgar Corp. v. Comm'r*, 744 F.3d 648, 653 (10th Cir. 2014) (citing 26 U.S.C. § 7491). To benefit from this burden-shifting exercise, an individual taxpayer must have: (1) complied with the requirements to substantiate any item; (2) maintained all required records; and (3) cooperated with reasonable requests for witnesses, information, documents, meetings, and interviews. *Id*. at 654 n.5 (cleaned up). The Tax Court concluded the Hamiltons failed to abide by these requirements, such that the burden should not shift. But we have observed "there is no need to rule on whether the burden shifts" when "evidence is not equally balanced." *Id*. at 654. Since the evidence in this case strongly favors the government, we decline to consider this argument.

The Code provides a limited exception for "reasonable cause" from otherwise-steep penalties when taxpayers fail to timely file their returns. *See* 26 U.S.C. § 6651(a)(1). Because the presence or absence of reasonable cause requires a factual determination, we review the Tax Court's treatment of late-filing penalties assessed under 26 U.S.C. § 6651(a)(1) for clear error. *See In re Craddock*, 149 F.3d 1249, 1255 (10th Cir. 1998) (citing *United States v. Boyle*, 469 U.S. 241, 249 n.8 (1985)).

Precedent tells us the Hamiltons bear a "heavy burden" in seeking to demonstrate reasonable cause. *See id.* (quoting *United States v. Boyle*, 469 U.S. 241, 245 (1985)). Indeed, we have previously observed that "reasonable cause exists 'if the taxpayer exercised ordinary business care and prudence and was nevertheless *unable* to file the return within the prescribed time.'" *Id.* (quoting Treas. Reg. § 301.6651-1(c) (emphasis in original)).

Here, the stipulated record offers no explanation that would account for the Hamiltons' failure to file timely their 2011 Tax Return. In briefing, they contend their attention was "consumed with [Mr. Hamilton's] care and well[-]being." Aplt. Br. 24. But the record discloses no evidence of incapacity, save for Mr. Hamilton's injury. And—during this same period—Mrs. Hamilton successfully managed the complex task of obtaining the student-loan discharge.

-11-

In our view, the Tax Court did not clearly err in upholding the late-filing penalties assessed under 26 U.S.C. § 6651(a)(1).

## III.  Conclusion

For the reasons stated herein, we accordingly AFFIRM the judgment of the Tax Court.